**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 0 5 2022

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**UNION PACIFIC RAILROAD COMPANY**                              **PLAINTIFF**

v.                              Case No. 4:22cv960-LPR

**RANDY G. FRANKLIN**                              **DEFENDANT**

## COMPLAINT

Plaintiff Union Pacific Railroad Company, by and through its undersigned counsel, for its Complaint against Defendant Randy G. Franklin, alleges as follows:

### INTRODUCTION

**1.**     To protect the safety of employees and the public, Union Pacific's longstanding work rules strictly prohibit employees from bringing firearms into the workplace. On August 3, 2020, Defendant Randy G. Franklin ("Franklin"), a Union Pacific conductor, had a firearm in his vehicle while it was parked at Union Pacific's North Little Rock Yard. After conducting an investigatory hearing as provided by Union Pacific's collective bargaining agreement with Franklin's union, the International Association of Sheet Metal, Air, Rail, and Transportation Workers—Transportation Division ("SMART-TD" or the "Union"), Union Pacific dismissed Franklin from employment.

**2.**     Franklin's Union filed a grievance to challenge Franklin's discharge and the dispute was heard before a grievance arbitration tribunal, known as a Public Law Board (the "PLB"), established pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq*.

**3.**     In an Award issued April 20, 2022, the PLB sustained discipline against Franklin equating to a suspension of nearly a year-and-a-half, but ordered Union Pacific

LEGAL\59664675\5

This case assigned to District Judge _____
and to Magistrate Judge _____

to restore him to employment without back pay or benefits for the time withheld from service as a result of the incident. The PLB specifically cautioned Franklin that Union Pacific would continue to maintain and enforce its zero-tolerance policy regarding firearms on company premises.

4. Following his reinstatement, Franklin (through counsel) has demanded that Union Pacific agree to his view that Arkansas law permits him to bring a firearm to the Union Pacific parking lot, notwithstanding Union Pacific's longstanding policies and practices, as well as federal law that imposes liability on railroads for workplace injuries that include incidents of violence in the workplace. Franklin has threatened legal action if Union Pacific does not accede to his position.

5. Because there is a live, ripe and justiciable controversy between the parties, Union Pacific brings this action for a declaratory judgment in light of the imminent risk that Franklin will bring suit to enforce his asserted right to bring firearms onto Union Pacific property or, even worse, consider bringing a firearm to work.

## PARTIES

6. Plaintiff Union Pacific Railroad Company ("Union Pacific") is a Class I railroad that provides freight transportation services in 23 states in the western half of the United States.

7. Union Pacific is a Carrier within the meaning of the RLA, 45 U.S.C. § 151, First.

8. Union Pacific's headquarters building, and principal place of business is 1400 Douglas Street, Omaha, Nebraska 68179.

9. Union Pacific maintains a work location at 1020 Vine Street in North Little Rock, Arkansas.

2

**10.** Defendant Randy G. Franklin ("Franklin") is an employee of Union Pacific who holds the position of conductor. He currently resides at 191 Randy Lane, Gurdon, AR 71743.

## JURISDICTION & VENUE & AUTHORITY

**11.** This Court has subject matter jurisdiction under the Railway Labor Act, 45 U.S.C. §§ 151–188, and 28 U.S.C. §§ 1331 & 1337. [Note the DJA doesn't confer jurisdiction.]

**12.** This Court has personal jurisdiction over Defendant Franklin because he is a citizen of Arkansas and he lives and resides in Arkansas and regularly works for Union Pacific out of its North Little Rock, Arkansas location.

**13.** Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this judicial district and Union Pacific operates substantial rail properties therein.

## BACKGROUND ON FELA AND THE RLA

**14.** Because the railroad industry was one of the first heavy industries nationwide in scope and intrinsically instrumental to interstate commerce, Congress stepped in to regulate the railroad industry before exercising authority over other sectors of the U.S. economy. To this day, rail carriers like Union Pacific remain subject to a host of federal laws that differ from those covering other industries. Two of those federal statutes are in conflict with the Arkansas statute upon which Franklin relies.

**15.** First, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, was enacted to provide a uniform national law providing liability against rail carriers for injuries to railroad employees during or in the course of their employment.

3

**16.** In contrast to the no-fault state systems for workers' compensation covering most industries, FELA generally requires injured railroad workers to prove that their employers' negligence was a cause of their injuries in order to recover. FELA claims are not adjudicated through a state administrative process but instead are litigated in state or federal court under federal law. Successful FELA litigants may recover compensatory damages for injuries sustained in the course of their employment.

**17.** Second, the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA") governs the subject of labor relations in the railroad industry and, beginning in 1936, the airline industry. The railroad and airline industries are generally exempted from coverage under the National Labor Relations Act. *See* 29 U.S.C. §§ 152(2), (3).

**18.** Labor disputes arising under the RLA fall within two categories. Disputes over the negotiation of collective bargaining agreements are referred to as "major disputes." Under the RLA, major disputes are subject to a mandatory mediation and resolution process.

**19.** The RLA provides a separate dispute resolution procedure for disputes concerning the interpretation or application of existing collective bargaining agreements, which are referred to as "minor disputes." Minor disputes that are not resolved in conferences between the parties or through the parties' grievance procedures are subject to mandatory arbitration. Section 3 of the RLA requires such disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute"

4

reflects that the nature of the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation or change to an agreement.

20.     Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.*, 491 U.S. 299, 303–05 (1989).

21.     The RLA preempts state law claims that depend upon an interpretation or application of the collective bargaining agreement between a rail carrier and one of its unions. *Gore v. Trans World Airlines,* 210 F.3d 944 (8th Cir. 2000).

22.     There is a rebuttable presumption that disputes between a railroad and its union employees are minor and, therefore, subject to mandatory binding arbitration exclusively under the RLA.

## ARKANSAS LAW ON FIREARMS AT WORK

23.     Arkansas maintains a law permitting possession of firearms in private employee parking lots under certain conditions. Ark. Code Ann. § 11–5–117 (July 28, 2021); see also Ark. Code Ann. § 5–73–326 (effective Aug. 1, 2017 through July 27, 2021; repealed and re-codified at Ark. Code Ann. § 11–5–117).

24.     Arkansas maintains a law permitting an employee to file a private right of action against an employer for violation of the law permitting possession of firearms in private employee parking lots under certain conditions. Ark. Code Ann. § 16–118–115.

25.     Arkansas maintains a law purporting to shield a private employer from liability in a civil action for damages, injuries, or death that arises out of an employee's actions involving a handgun transported and stored in the employer's parking lot under Ark. Code Ann. § 11–5–117. *See* Ark. Code Ann. § 16–120–802.

## FRANKLIN'S UNDERLYING CONDUCT AND ARBITRATION AWARD

**26.** On August 3, 2020, at approximately 11:45 a.m., Union Pacific discovered that Franklin had stowed a firearm in his vehicle parked at Union Pacific's North Little Rock Yard, 1020 Vine St, North Little Rock, AR 72114. When asked at his disciplinary hearing, Franklin admitted that he did have a handgun in his vehicle on August 3, 2020.

**27.** Union Pacific maintains two longstanding rules prohibiting employees from bringing firearms onto company property. General Code of Operating Rules ("GCOR") 1.12, prohibits employees (other than railroad police) "while on duty or on railroad property" from having "firearms or other deadly weapons." Item 10-I: Union Pacific Railroad Policies – Policy to Address Violence & Abusive Behavior in the Workplace ("Workplace Violence Policy") prohibits employees from "possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons." The Workplace Violence Policy specifically states that "[t]his prohibition applies even if the individual is licensed to carry a concealed handgun under state law."

**28.** Union Pacific has maintained a long-standing past practice, with the knowledge and consent of the Union, to maintain and enforce a zero-tolerance policy for the presence of firearms by employees while on duty or on railroad property (except for railroad police).

**29.** The Union, through its acquiescence to this long-standing past practice and its repeated failure to bargain for a change to this practice, consented to the imposition of the Union Pacific's Workplace Violence Policy and GCOR 1.12.

**30.** The Union, acting on behalf of and for its employee members, including Franklin, has consented to and waived any rights of its members to violate the terms of the Union Pacific's Workplace Violence Policy and GCOR 1.12.

6

**31.**   On August 31, 2020, Union Pacific terminated Franklin's employment for violating the Workplace Violence Policy and GCOR 1.12.

**32.**   On behalf of Franklin, the Union grieved Franklin's dismissal and ultimately submitted the issue as a minor dispute to Public Law Board 7029.

**33.**   On April 20, 2022, the Public Law Board issued Award No. 200. A true and correct copy of that decision is attached as Exhibit 1.

**34.**   Through its decision, the Board found Franklin guilty of the offense charged but held that Franklin's length of service and good record "stand in mitigation of the discipline of discharge."

**35.**   As a remedy, the Board sustained a suspension of nearly a year-and-a-half for Franklin, ordering Union Pacific to restore him to employment but without back pay or benefits for the time withheld from service as a result of his violation.

**36.**   In its award, the Board stated that Franklin "should now be aware that it remains the firm position of this carrier that bringing a firearm on property, even if stored in a locked vehicle, continues to not be permitted.  The claimant is reminded that the carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced."

**37.**   On or around March 31, 2022, Union Pacific restored Franklin to his position in accordance with Award 200.

7

## FRANKLIN'S DEMAND LETTER

**38.**  On or around September 6, 2022, Franklin's lawyer, W. Whitfield Hyman of King Law Group PLLC, sent a letter to Union Pacific's general counsel. A true and correct copy of that letter is attached as Exhibit 2.

**39.**  In his letter of September 6, 2022, Franklin's lawyer advised Union Pacific that Franklin "desires simply to enjoy the protection provided by Ark. Code Ann. § 11–5–117" and stated that Union Pacific's policies "would run afoul of Ark. Code Ann. § 11–5–117."

**40.**  In his letter of September 6, 2022, Franklin's lawyer quoted in its entirety Ark. Code Ann. § 16–118–115, which authorizes a private right of action for violations of Ark. Code Ann. § 11–5–117.

**41.**  In his letter of September 6, 2022, Franklin's lawyer advised Union Pacific that Franklin will "act accordingly" if Union Pacific did not agree with Franklin's position.

**42.**  In his letter of September 6, 2022, Franklin's lawyer set a deadline for Union Pacific to respond by October 6, 2022.

**43.**  At this point, there is a real and concrete dispute between Union Pacific and Franklin on the effect of Ark. Code Ann. § 11–5–117 as it applies to Union Pacific's parking lots in Arkansas.

**44.**  Upon information and belief, Franklin is preparing to file a legal action against Union Pacific in state or federal court under Ark. Code Ann. § 16–118–115 to seek equitable relief, compensatory damages, and reasonable attorney's fees and costs in order to allow him to bring a firearm onto Union Pacific's parking lot in violation of the Workplace Violence Policy, GCOR 1.12, and Union Pacific's longstanding policy of zero

8

tolerance with regard to possessing firearms in its facilities, equipment, or vehicles on company premises.

## COUNT I – DECLARATORY JUDGMENT
### (FELA Preemption)

**45.** Union Pacific re-alleges and re-incorporates the preceding paragraphs.

**46.** Pursuant to 28 U.S.C. § 2201, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration." Pursuant to 28 U.S.C. § 2202, "further necessary or proper relief based on a declaratory judgment" may be granted after notice and hearing on "any adverse party whose rights have been determined by such judgment."

**47.** An actual and substantial controversy exists between Union Pacific and Franklin on whether Franklin is permitted by applicable federal and state law to bring a firearm onto a Union Pacific parking lot.

**48.** Under FELA, an injured Union Pacific employee or the estate of a deceased Union Pacific employee could recover damages against Union Pacific for an injury or death resulting from or arising out of a handgun transported or stored on Union Pacific's property, if it resulted in whole or in part from Union Pacific's negligence. Whether a FELA action is litigated in state or federal court, negligence under FELA is question of federal law and does not depend on state law.

**49.** Ark. Code Ann. § 16–120–802 purports to exempt Union Pacific from such liability, stating that a "private employer is not liable in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 11–5–117 or from allowing a person to enter the private employer's place of business or parking lot under § 11–5–117 ..."

9

**50.** As applied to railroads including Union Pacific, Ark. Code Ann. § 16–120–802 violates the Supremacy Clause of the United States Constitution, U.S. Const., Art. VI, Cl. 2, because the Arkansas Legislature cannot immunize Union Pacific from federal civil liability under FELA.

**51.** Ark. Code Ann. § 16–120–802's liability shield and Ark. Code Ann. § 11–5–117's underlying prohibition are part of an interrelated and interdependent statutory scheme. Both provisions originally were adopted in 2017 as part of a single piece of legislation, Act 1071 of 2017. Ark. Code Ann. § 16–120–802 specifically references Ark. Code Ann. § 11–5–117. Neither Act 1071 of 2017 nor Act 809 of 2021, which re-codified both provisions, contain language suggesting that the Arkansas Legislature intended the provisions to be severable. This history reflects that the Arkansas Legislature did not intend Ark. Code Ann. § 11–5–117's prohibition to apply to employers who would not also be protected by Ark. Code Ann. § 16–120–802's liability shield.

**52.** Because § 16–120–802 is non-severable from § 11–5–117 of the Arkansas Code, both provisions are preempted by FELA as applied to railroads including Union Pacific.

**53.** A real, live and ripe controversy exists between the parties with respect to the applicability of Ark. Code Ann. § 11–5–117 to Union Pacific.

**54.** Accordingly, Union Pacific respectfully requests judgment in its favor and against Defendant Randy G. Franklin and specifically that the Court

    **a.** Declare that Ark. Code Ann. § 11–5–117 is preempted by the Federal Employers' Liability Act to the extent that it would apply to Union Pacific parking lots located in Arkansas;

10

**b.**     Enter a permanent injunction prohibiting Defendant Franklin (directly, and through any agent or attorney representing him) from initiating a legal action under Ark. Code Ann. § 16–118–115 against Union Pacific, in any state or federal forum; and

**c.**     Issue such other and further relief as justice requires.

**55.**     Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure and Ark. Code Ann. § 16–111–111(a), a Notice of Constitutional Question will be served on the Arkansas Attorney General contemporaneously with serve of process upon Franklin.

### COUNT II – DECLARATORY JUDGMENT
### (RLA Preemption)

**56.**     Union Pacific re-alleges and re-incorporates the preceding paragraphs.

**57.**     Pursuant to 28 U.S.C. § 2201, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration." Pursuant to 28 U.S.C. § 2202, "further necessary or proper relief based on a declaratory judgment" may be granted after notice and hearing on "any adverse party whose rights have been determined by such judgment."

**58.**     An actual and substantial controversy exists between Union Pacific and Franklin on whether Franklin is permitted by applicable federal and state law to bring a firearm onto a Union Pacific parking lot.

**59.**     Franklin contends that Ark. Code Ann. § 11–5–117 allows him to bring a firearm onto a Union Pacific parking lot.

**60.**     Ark. Code Ann. § 11–5–117 is preempted by the RLA to the extent it would purport to allow an employee to bring a firearm onto a Union Pacific parking lot, which would violate Union Pacific's collective bargaining agreements, which incorporate the

Union's consent to Union Pacific's longstanding enforcement of its Workplace Violence Policy and GCOR 1.12.  Through the CBA, Franklin has waived any state law right he would otherwise possess to bring a firearm onto a Union Pacific parking lot.

61.     Any claim by Franklin that the Union has not consented, on Franklin's behalf, to Union Pacific's enforcement of its Workplace Violence Policy and GCOR 1.12 requires the interpretation or application of Union Pacific's collective bargaining agreements and therefore constitutes a "minor dispute" within the meaning of the RLA. Such minor disputes must be heard exclusively by an adjustment board or arbitral panel of coordinate jurisdiction under Section 3 of the RLA and cannot be heard in a court of law.

62.     Accordingly, there exists a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.

63.     Therefore, Union Pacific respectfully requests judgment in its favor and against Defendant Randy G. Franklin and specifically that the Court:

a.     Declare that the dispute between Franklin and Union Pacific as to applicability of Ark. Code Ann. § 11–5–117 as applied to Union Pacific parking lots located in Arkansas constitutes a "minor dispute" within the meaning of the RLA;

b.     Enter a permanent injunction prohibiting Defendant Franklin (and any agent or attorney representing him) from initiating a legal action under Ark. Code Ann. § 16–118–115 against Union Pacific, in any state or federal forum; and

c.     Issue such other and further relief as justice requires.

Respectfully submitted,

Abtin Mehdizadegan, Ark. Bar No. 2013136
**CROSS, GUNTER, WITHERSPOON**
  **& GALCHUS, P.C.**
500 President Clinton Ave., Suite 200
Little Rock, AR 72201
Phone: (501) 371-9999
Fax: (501) 371-0035
abtin@cgwg.com

***Of Counsel to Constangy, Brooks, Smith***
***& Prophete, LLP***

- AND -

Robert S. Hawkins (pro hac vice pending)
Joseph P. Sirbak, II (pro hac vice pending)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000
rhawkins@cozen.com
jsirbak@cozen.com

Michael J. Mills (pro hac vice pending)
Union Pacific Railroad
1400 Douglas Street
Omaha, NE 68179
(402) 544-0441
mjmills@up.com

13

# PUBLIC LAW BOARD NO. 7029

SMART - TRANSPORTATION DIVISION )
) **CASE NO. 200**
v. ) **AWARD NO. 200**
)
UNION PACIFIC RAILROAD COMPANY )

## STATEMENT OF CLAIM:

"Claim is on behalf of Conductor Randy G. Franklin for reinstatement of service, removal of discipline (for allegedly parking your car at the location of 1020 Vine Street North Little Rock, AR and you allegedly had a loaded firearm stowed in your vehicle while it was parked on company property.) from the personal record, the removal of EQMS notations, as well as restoration of point system, and pay for any and all time lost including time for attending investigation. Claim includes payment for all wage equivalents to which entitled including vacation time; with all medical, surgical, life and dental benefits, and reimbursement for any expenditures to secure like or similar insurance coverage, and/or out-of-pocket medical expenses that were incurred because insurance coverage that lapsed as a result of the discipline."

## FINDINGS AND OPINION:

Public Law Board No. 7029, upon the whole record and all the evidence, finds that the parties involved in this dispute are respectively Carrier and Employees within the meaning of the Railway Labor Act, as amended. Parties to said dispute were given due notice of hearing thereon.

On August 21, 2020, the Claimant attended a formal hearing to develop the facts and determine his responsibility, if any, regarding a charge of allegedly having parked his car at the location of 1020 Vine Street, North Little Rock, AR, with a loaded firearm stowed in his vehicle while it was parked on company property. The alleged incident occurred on August 3, 2020, at approximately 11:45 a.m., near Milepost 343.5, Hoxie Subdivision, while the Claimant was employed as a conductor.

By letter dated August 31, 2020, the Carrier notified the Claimant that the charge against him was sustained after careful consideration of the evidence adduced at the hearing. The Claimant was assessed discipline of dismissal from all service with the Union Pacific Railroad for his violations of GCOR 1.12, *Weapons*;

and Item 10-I: *Union Pacific Railroad Policies – Policy to Address Violence & Abusive Behavior in the Work Place.*

The Organization promptly appealed the Carrier's disciplinary action and the parties ultimately conducted an on-property conference on the matter. Unable to reach a mutual resolution of the dispute, the parties brought this dispute properly before the Board for final and binding adjudication.

The Board has carefully reviewed the investigation transcript and the full record of this case as developed on the property. We have considered the parties' procedural arguments as set forth in their submissions at arbitration. We find that the Claimant was afforded all contractual due process rights, and that this matter is procedurally sound in all respects.

On August 2, 2020, the Claimant was called for the conductor's position on Train MASAR-10, which he and his crew operated from North Little Rock, AR to Longview, TX. On August 3, 2020, he and his crew were called at 12:00 p.m., for Train DH35DU-03, his return assignment to North Little Rock. Upon reporting for duty on August 2, 2020, the Claimant parked his truck, a 2006 Chevy Avalanche, in the Carrier's parking lot at 1020 Vine Street. It is not disputed that the Claimant left in the pocket behind the passenger seat a loaded handgun (9 mm Beretta) which North Little Rock Police Department law enforcement personnel found when investigating and extinguishing an electrical fire in the Claimant's truck.

A check of the firearm showed it properly registered to Claimant. Law enforcement determined that the Claimant possessed a valid concealed handgun license and determined the Claimant had broken no Arkansas or city code violations by leaving the firearm secured in the vehicle. The Claimant was thus advised he could retrieve the firearm from the North Little Rock Police Department. On August 6, 2020, the Carrier issued the Claimant a Notice of Investigation, identifying GCOR 1.12 and Item 10-I of Union Pacific Policies, quoted above, as among the rule and policy possibly violated by stowing a loaded firearm in his vehicle while parked on company property.

GCOR 1.12 – *Weapons*, states:

While on duty or on railroad property, employees must not have firearms or other deadly weapons, including knives with a blade longer than 3 inches. However, railroad police are authorized to possess firearms in the course of their work.
Application:

Exhibit 1

Also refer to UPRR Policy to Address Violence & Abusive Behavior in
the Work Place.  Access the policy by using the link:
http://home.www.uprr.com/emp/ec/policy/violence.shtml
Rule Updated Date
April 1, 2015

The relevant portions of the governing UPRR Policy to Address Violence &
Abusive Behavior in the Work Place Policy, as revised on May 11, 2015, read in
pertinent part:

Union Pacific is committed to maintaining a safe work
environment free of all forms of violence, including verbal and
physical threats.  The Company has a zero tolerance policy with
respect to all forms of violence in the workplace.  This policy applies
to all employees, customers, contractors, vendors, visitors, or any
individual on Union Pacific property.  Individuals subject to this
policy as also responsible for compliance with applicable state and
federal laws.

*        *        *

Union Pacific employees and all other individuals on Company
property or involved in Union Pacific business off Company property
are prohibited from possessing or hiding weapons in facilities,
equipment, or vehicles used in operations while on such property, or
on their persons, which includes but is not limited to grips, suitcases,
gym bags and purses.  This prohibition applies even if the individual
is licensed to carry a concealed handgun under state law.   Only Union
Pacific Police and on-duty law enforcement officers acting in an
official capacity are authorized to possess weapons on Company
property.

For purposes of this policy, a "weapon" shall mean any device,
instrument, material or substances (animate or inanimate) that is used
to threaten, or is capable of causing, death or bodily injury.  This
prohibition includes but is not limited to firearms, knives with a blade
longer than three inches, tasers, stun guns and pepper sprays.  Union
Pacific Police are authorized to make the final determination of
whether a particular item constitutes a weapon under this policy.

Alleged violations of this policy will be investigated.  All proven
violations of this policy will result in appropriate disciplinary action

up to and including termination of employment with the Company as well as possible civil or criminal prosecution when appropriate.

\*       \*       \*

Arkansas Code A.C.A. § 5-73-326. *Licensee rights – Private employer parking lot.* was in effect at the time of the incident.  It reads as follows:

(a) A private employer shall not prohibit an employee who is a licensee from transporting or storing a legal owned handgun in the employee's private motor vehicle in the private employer's parking lot when:

(1) The handgun:

(A) Is lawfully possessed;

(B) Is stored out of sight inside a locked private motor vehicle in the private employer's parking lot; and

(C)
(i) Is stored inside a locked personal handgun storage container that is designed for the safe storage of a handgun.

(ii) An employee is not required to store the handgun in the personal handgun storage container as required in subdivision (a)(1)(C)(i) of this section until he or she is exiting his or her private motor vehicle; and

(2) The employee has in his or her possession the key to the personal handgun storage container as required by subdivision (a)(1)(C)(i) of this section.

The Claimant testified that he habitually drove to work with the handgun in his car in order to feel safe while making the 80-mile commute between his residence and work location at North Little Rock.  The totality of his testimony further established he had completed the required training necessary for obtaining a concealed handgun carry license, and that it has never been his intent to use the handgun for illicit purposes at work, or to undertake an act of violence.  The Claimant submitted a letter of support from the Sheriff of Clark County, Arkadelphia, AR, where the Claimant has been a life-long resident, attesting to his impeccable character and excellent reputation with the community.  The Claimant as a longstanding employee of the Carrier, was periodically trained and qualified on

the General Code of Operating Rules, including GCOR 1.12, and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy.

The Board has carefully studied the extensive record regarding all substantive issues underlying this case. We have carefully reviewed the Carrier's arguments as set forth during the on-property handling and in its written submission and during oral arguments before the Board. We have afforded equal consideration to the Organization's position and arguments on the Claimant's behalf as conveyed throughout the on-property handling of this case and at arbitration. The Organization's strong advocacy on behalf of the Claimant is well reflected in the record properly before this Board.

The Board finds that the record contains substantial evidence in support of the Carrier's determinations that the Claimant violated GCOR 1.12 and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy by keeping a handgun in his vehicle while parked on company property. Although the Claimant and Organization dispute the Carrier's right to enforce its rule and policy under Arkansas law as it pertains to employer parking lots, the Carrier's long-standing and well-promulgated rule and policy prohibiting bringing weapons to work, including stowing them in personal vehicles, addresses a conduct matter on which all employees, including the Claimant, have been consistently trained on as a means toward ensuring the Carrier's ability to maintain a safe work environment free of all forms of violence.

As the Carrier argues, the GCOR 1.12, *Weapons*, falls within the Rule Category of Dismissible Offenses as specified in the well-promulgated MAPS Process Matrix (updated, November 1, 2019). The Board finds that the Carrier has consistently enforced GCOR 1.12 and the Violence & Abusive Behavior Work Place Policy. We are thus unwilling to interfere with the Carrier's administration and enforcement of this rule and policy as the Carrier deems appropriate.

However, in this particular case the totality of the facts and circumstances and the Claimant's length of service and good record stand in mitigation of the discipline of discharge. The Board rules that appropriate disciplinary action in this particular case falls short of permanent dismissal.

Therefore, the Board holds that the instant claim shall be sustained in part. The Claimant shall be reinstated to service, with seniority intact, but without back pay or benefits from the time withheld from service as a result of this incident until his reinstatement. The Claimant's failure to have his firearm secured in a lock box, as required by Arkansas Code A.C.A. § 5-73-326 at the time of this incident, has not gone unnoticed by the Board, and contributes to our decision to deny back pay.

Exhibit 1

The Claimant should now be aware that it remains the firm position of this Carrier that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted.  The Claimant is reminded that the Carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced.

The Claimant's reinstatement is conditioned upon his satisfactory completion of the customary requirements for employees returning to service after a protracted period of absence.  The Carrier is directed to return the Claimant to service at the level of MAPS Training 1, with a 24-month retention period to end on August 3, 2022.

### AWARD:

Claim sustained in accordance with the Findings.  The Carrier is ordered to comply with this Award within 30 days of its date.

*Lynette A Ross*
Lynette A. Ross, Neutral Member

*David L. Young*
David L. Young,
Carrier Member

*Terry L. Dixon*
Terry L. Dixon,
Employee Member

Dated:   4/20/2022

1

Exhibit 2

# KING LAW GROUP, PLLC

**300 North 6th Street**
**Ft. Smith, AR 72901**
**P: 479-782-1125  F: 479-316-2252**
**E: email@arkansaslawking.com**

**Gary King**
**James C. King**
**W. Whitfield Hyman**

September 6, 2022
Craig V. Richardson
Chief Legal Officer
Union Pacific Railroad
1400 Douglas Street
Omaha, NE 68179

Re: Union Pacific Firearm Policy in Arkansas

Dear Mr. Richardson:

This office represents Randy G. Franklin, who is a conductor with Union Pacific through your company's location at 1020 Vine Street in North Little Rock, Arkansas. I have attached to this letter a recent decision from the Department of Labor adjudicating Mr. Franklin's claim for reinstatement of service and removal of discipline. Mr. Franklin's claim arose from allegations that a loaded firearm was kept within his vehicle on company property in violation of company policy. It is about this company policy that I am writing. On behalf of Mr. Franklin, I am respectfully requesting that Union Pacific clarify its position in view of recently enacted Arkansas legislation.

Page six of the attached Public Law Board's Decision No. 7029 contains the following:

The Claimant should now be aware that it remains the firm position of this Carrier that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted. The Claimant is reminded that the Carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced.

After this pronouncement, the state of Arkansas enacted A.C.A. 11-5-117, which reads in

pertinent part as follows:

§ 11-5-117. Possession of firearm in private employer parking lot

(a) As used in this section:

(1) "Parking lot means a designated area, or structure, or part of a structure intended for the parking of motor vehicles.

(b) A private employer shall not prohibit an employee from transporting or storing a legally owned firearm in the employee's private motor vehicle in the private employer's parking lot when the firearm is:

(1) Lawfully possessed; and

(2) Stored out of sight inside a locked private motor vehicle.

(c) A private employer shall not prohibit or attempt to prevent an employee from entering the parking lot of the private employer's place of business because the employee's private motor vehicle contains a firearm if the firearm is:

(1) Kept for lawful purposes; and

(2) Stored out of sight inside a locked private motor vehicle.

§ 11-5-117 has an enforcement mechanism by means of another recently enacted Arkansas statute:

§ 16-118-115. Civil actions regarding violations of Section 11-5-117

An employer or employee who knowingly violates § 11-5-117 is liable to the prevailing party in an action brought under this section and, upon proving the prevailing party's case by clear and convincing evidence, is entitled to one (1) or more of the following remedies:

(1) Equitable relief;

(2) Compensatory damages; and

(3) Costs and fees, including reasonable attorney's fees.

History:

Amended by Act 2021, No. 809, §4, eff. 7/28/2021. Added by Act 2017, No. 1071, §4, eff. 8/1/2017.

In view of these legislative developments, Mr. Franklin's position is that Union Pacific's policy, as articulated in the attached Public Law Board's Decision No. 7029, would run afoul of A.C.A. 11-5-117. For that reason, Mr. Franklin is requesting that Union Pacific state whether or not it maintains the policy as stated in Decision No. 7029. Mr. Franklin's request is not made in the abstract. His concrete interest in the issue is evinced by the stated findings of Decision No. 7029 on pages four and five:

[Mr. Franklin] testified that he habitually drove to work with the handgun in his car in order to feel safe while making the 80-mile commute between his residence and work location at North Little Rock. The totality of his testimony further established he had completed the required training necessary for obtaining a concealed handgun carry license, and that it has never been his intent to use the handgun for illicit purposes at work, or to undertake an act of violence. The

Claimant submitted a letter of support from the Sheriff of Clark County, Arkadelphia, AR, where the Claimant has been a life-long resident, attesting to his impeccable character and excellent reputation with the community. The Claimant as a longstanding employee of the Carrier, was periodically trained and qualified on the General Code of Operating Rules, including GCOR 1.12, and the UPRR Policy to Address Violence & Abusive Behavior in the Workplace Policy.

These factual determinations remain true. Mr. Franklin desires simply to enjoy the protection provided by A.C.A. 11-5-117. If Union Pacific can provide assurance that its policy on firearms will conform to the statutory requirements and prohibitions here cited, then no further action by either party would be necessary in this particular matter. If, however, Union Pacific disagrees with Mr. Franklin's position, please be so kind as to advise so that Mr. Franklin can act accordingly.

Please respond within 30 days. If we do not receive a response, we will assume that Union Pacific's policy remains the same as that attributed to Union Pacific on page 6 of Decision No. 7029. In the meantime, if you have any questions or concerns, please do not hesitate to contact me.

Sincerely,
W. Whitfield Hyman