IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **PLAINTIFF/ COUNTER-DEFENDANT** |
| v.                Case No. 4:22-CV-00960-LPR | |
| **RANDY G. FRANKLIN** | **DEFENDANT/ COUNTER-CLAIMANT** |

## ORDER CERTIFYING A LEGAL QUESTION TO THE SUPREME COURT OF ARKANSAS

This is a gun rights case. It is a simple case, factually and legally speaking. But simple does not mean easy. The dispositive issue—teed up cleanly by the parties—is a "close call" of state law. It is also an issue of first impression in a legal area of great importance to many Arkansans—and an area in which the Arkansas General Assembly has been particularly active in the last decade. Moreover, there are no good indicators to allow this Court to make an educated prediction as to how the Supreme Court of Arkansas would come down on the dispositive issue. Under Eighth Circuit precedent, these factors are important in guiding a federal court's discretion to certify a question to a state supreme court.[1] Accordingly, this Court believes the most appropriate course of action—considering the weighty principles of federalism and comity that lie at the heart of our dual-sovereign constitutional system—is to certify the dispositive legal question to the Supreme Court of Arkansas.[2]

---

[1] *See Johnson v. John Deere Co., a Div. of Deere & Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.,* 851 F.2d 418, 426 (D.C. Cir. 1988) (noting that "[t]he most important consideration guiding the exercise of this discretion . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law . . .").

[2] When considering a certified question from a federal court, the Supreme Court of Arkansas considers whether:

(1) the question of law is one of first impression and is of such substantial public importance as to require a prompt and definitive resolution by this court; (2) the question of law is one with respect

Here's the quick legal backdrop that gives rise to the dispositive question. Arkansas Code Annotated section 16-120-802(a) immunizes "[a] business entity, owner or legal possessor of property, or private employer" from liability "in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 11-5-117 or from allowing a person to enter the private employer's place of business or parking lot under § 11-5-117 . . . unless the business entity, owner or legal possessor of property, or private employer intentionally solicited or procured the other person's actions." As applied to railroad companies, this liability immunity is preempted by the Federal Employers' Liability Act (FELA), which provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."[3]

With exceptions not relevant here, Arkansas Code Annotated section 11-5-117 makes it unlawful for:

> (1) a private employer to prohibit an employee from transporting or storing a firearm on the private employer's parking lot so long as the firearm is lawfully possessed and stored out of sight inside the employee's locked private motor vehicle, or
>
> (2) a private employer to prohibit or attempt to prevent an employee from entering the private employer's parking lot because the employee's private motor vehicle contains a firearm so long as the firearm is lawfully possessed and stored out of sight inside the employee's locked private motor vehicle.

---

to which there are conflicting decisions in other courts; (3) the question of law concerns an unsettled issue of the constitutionality or construction of a statute of this State.

*Longview Prod. Co. v. Dubberly*, 352 Ark. 207, 210, 99 S.W.3d 427, 429 (2003) (cleaned up). The Court believes factors one and three weigh in favor of granting the certified question. Factor two is not implicated.

[3] 45 U.S.C. § 51. *See also Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 984 (8th Cir. 2020) ("Under the FELA, a railroad will be liable if its or its agent's negligence played any part, *even the slightest*, in producing the employee's injury.") (cleaned up) (emphasis in original).

With that background in mind, here's the dispositive legal question that merits certification:

> Are the prohibitions in Arkansas Code Annotated section 11-5-117 severable from the liability-immunity provisions in section 16-120-802(a) such that section 11-5-117 would still apply when the liability-immunity provisions of section 16-120-802(a) cannot apply?

Of course, as the receiving court, the Supreme Court of Arkansas has full authority to reformulate the foregoing certified question.[4]

## BACKGROUND

Union Pacific Railroad Company (Union Pacific) is the Plaintiff and Counter-Defendant in this declaratory judgment action. Randy Franklin, an employee of Union Pacific, is the Defendant and Counter-Claimant. As those identifiers suggest, there are dueling Complaints in this case. The Complaints seek mirror-image relief.[5] And there are no disputed facts that would have a material impact on the relief requested.[6]

On August 3, 2020, Mr. Franklin came to work with a gun in his vehicle.[7] The gun stayed in his car, which was parked in the railroad's parking lot.[8] Mr. Franklin believed that the prior version of the rights currently set out in Arkansas Code Annotated sections 11-5-117 and 5-73-306(18)(B)(iii) allowed him to do this.[9] The Arkansas General Assembly enacted the prior version of the current law in 2017.[10] However, because bringing the gun onto railroad property

---

[4] *See* Ark. Sup. Ct. R. 6-8(c)(1)(C).

[5] *See* Compl. (Doc. 1) at 9–12; Answer and Countercl. (Doc. 11) at 5–9.

[6] *See* Compl. (Doc. 1) at 1–3, 6–9; Answer and Countercl. (Doc. 11) at 1–5.

[7] Compl. (Doc. 1) at 1, 6; Ex. 1 to Compl. (Doc. 1) at 2.

[8] *Id*.

[9] *See* Ex. 1 to Compl. (Doc. 1) at 4–5.

[10] *See* §§ 5-73-306(18)(B)(iii) (Repl. 2017) and 5-73-326 (Repl. 2017). For some reason, Act 1071 suggests the operative code section is section 5-73-324 as opposed to section 5-73-326. Act 1071 of 2017 §§2–5. But the Arkansas Code Annotated suggests section 5-73-326 is the correct section. *See* Ark. Code Ann. § 5-73-326 (Repl. 2017).

violated Union Pacific's policies, Union Pacific decided to terminate Mr. Franklin.[11] This termination was eventually reduced to a suspension without pay by an arbitration panel.[12] The reduction in discipline was attributed to Mr. Franklin's "length of service and good record . . . ."[13]

Despite the reduction in discipline, the arbitration panel took pains to make clear to Mr. Franklin that "it remains the firm position of [Union Pacific] that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted."[14] The panel reminded Mr. Franklin that Union Pacific "has made clear during the handling of this matter that it intends to not waiver in its position that [its policies] of zero tolerance with regard to possessing firearms in facilities, equipment[,] or vehicles on company premises[] will continue to be maintained and enforced."[15]

Mr. Franklin went back to work for Union Pacific in July of 2022.[16] He still wanted to bring his gun to work and keep it out of sight, in his locked car, in Union Pacific's parking lot.[17] During Mr. Franklin's suspension, the Arkansas General Assembly doubled down on the relevant gun rights, further reducing the restrictions on employees keeping guns in their cars while those cars are parked in a private employer's parking lot.[18] The General Assembly removed the

---

[11] Compl. (Doc. 1) at 1, 7; Ex. 1 to Compl. (Doc. 1) at 1.

[12] Compl. (Doc. 1) at 1–2, 7; Ex. 1 to Compl. (Doc. 1) at 5–6.

[13] Ex. 1 to Compl. (Doc. 1) at 5.

[14] *Id*. at 6.

[15] *Id*.

[16] Answer and Countercl. (Doc. 11) at 3. Mr. Franklin alleges his return to work was delayed until July of 2022, while Union Pacific alleges his return date was in March of 2022. *Compare id*., *with* Compl. (Doc. 1) at 7. For purposes of the dispositive legal question here, the date of Mr. Franklin's return to work does not matter. Having said that, since the arbitration panel's decision did not come out until April of 2022, Union Pacific's allegation that the return-to-work date was in March of 2022 seems suspect. *See* Ex. 1 to Compl. (Doc. 1) at 6.

[17] *See* Ex. 2 to Compl. (Doc. 1) at 3. *See also* Compl. (Doc. 1) at 2.

[18] *See* Act 809 of 2021.

requirement of having a concealed carry permit to exercise this right.[19] The General Assembly also did away with the requirement of keeping the gun in a locked storage container inside the car.[20] In order to best effect these changes, some reshuffling of the Code occurred. The principal gun rights protection at issue in this case was moved to section 11-5-117.[21]

In September of 2022, Mr. Franklin's lawyer sent Union Pacific a letter asking the company to "clarify its position in view of recently enacted Arkansas legislation."[22] The letter identified and described Arkansas Code Annotated section 11-5-117.[23] The letter then explained that, "[i]n view of these legislative developments, Mr. Franklin's position is that Union Pacific's policy [of no guns in vehicles parked in Union Pacific parking lots] would run afoul of A.C.A. 11-5-117."[24] The letter sought assurances that Union Pacific agreed with Mr. Franklin's position, seemingly threatening legal action if Union Pacific maintained a contrary position.[25]

Not wanting to wait for the inevitable lawsuit, Union Pacific filed a declaratory judgment action here in federal court.[26] Primarily, Union Pacific seeks a declaration from this Court that "Ark. Code Ann. § 11-5-117 is preempted by [FELA] to the extent that it would apply to Union Pacific parking lots in Arkansas[.]"[27] Despite the wording of this request, Union Pacific is not arguing that FELA directly preempts the gun rights set forth in section 11-5-117.[28] Instead, its

---

[19] *Id*. §§ 1 and 3.

[20] *Id*. § 3.

[21] *Id*.

[22] Ex. 2 to Compl. (Doc. 1) at 1.

[23] *Id*. at 1–3.

[24] *Id*. at 3.

[25] *See id*.

[26] *See generally* Compl. (Doc. 1).

[27] *Id*. at 10.

[28] *See id*.; Br. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 15) at 13–15.

argument is more of a bank shot. Union Pacific first argues that, as applied to railroad companies, FELA directly preempts a separate provision of the Arkansas Code: section 16-120-802(a).[29] Union Pacific then argues that section 16-120-802(a) is not severable from section 11-5-117, and thus preemption of section 16-120-802(a) automatically means preemption of section 11-5-117.[30]

Mr. Franklin answered the Complaint and brought a Counterclaim.[31] The Counterclaim primarily seeks a declaratory judgment that that Union Pacific must allow him to bring his firearm onto railroad property, so long as the firearm is legally possessed for a lawful purpose and stored out of sight in his locked car (which is parked in Union Pacific's parking lot).[32] Mr. Franklin does not contest that FELA preempts Arkansas Code Annotated section 16-120-802(a) as applied to railroad companies.[33] What he strongly contests is the notion that the preemption of section

---

[29] Compl. (Doc. 1) at 9–10.

[30] *Id*. at 10; Br. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 15) at 13–15.

[31] Answer and Countercl. (Doc. 11).

[32] *Id*. at 6–8.

[33] *See* Def.'s Resp. to Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 16). Mr. Franklin's Answer denied Union Pacific's contention that FELA preempts section 16-120-802(a) as applied to railroads. Answer and Countercl. (Doc. 11) at 4. But he does not address this issue at all in his motion-to-dismiss briefing, even though Union Pacific clearly put the issue in contention in its opening brief. As a result, Mr. Franklin has waived (or at least forfeited) any argument that FELA does not preempt section 16-120-802(a) as applied to railroads. *See City of Carthage, Missouri v. Union Pac. R.R. Co.*, 603 F. Supp. 3d 711, 734 (W.D. Mo. 2022), *aff'd*, 61 F.4th 565 (8th Cir. 2023) (citing *United States v. Reed*, 972 F.3d 946, 955 n.5 (8th Cir. 2020) ("A party waives an argument or issue if it sets forth a bare assertion that is not meaningfully developed or argued."); *but see United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) ("Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[, while] waiver is the intentional relinquishment or abandonment of a known right."); *Reinard v. Crown Equipment Corp.*, 983 F.3d 1064, 1066 (8th Cir. 2020) (citing *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1 (2017)) (same principle).

In any event, this Court has no trouble concluding that FELA preempts section 16-120-802(a) as applied to railroads. *See Nordgren v. Burlington N. R. Co.*, 101 F.3d 1246, 1250 (8th Cir. 1996) ("It is settled law that FELA preempts state-law personal injury claims by injured railroad employees against their employers and creates a uniform federal law of liability in this field."). With extremely limited exceptions, section 16-120-802(a) gives private employers blanket immunity from liability "in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 11-5-117 or from allowing a person to enter the private employer's place of business or parking lot under § 11-5-117 . . . ." FELA, on the other hand, mandates that railroads—which are private employers—are liable "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . ."). 45 U.S.C. § 51. Where state law would immunize a railroad company from liability arising from an employee having a handgun in his car even when the damage, injury, or death was in whole or part attributable to the negligence of the railroad or its employees, FELA and section 16-120-802(a) are in irreconcilable conflict. Pursuant to the Supremacy Clause of the

16-120-802(a) leads to the preemption of section 11-5-117.[34]   Where Union Pacific sees inseverability, Mr. Franklins sees severability.[35]

Pending before the Court is Union Pacific's Motion to Dismiss Mr. Franklin's Counterclaim.[36]  This Motion and its Brief in Support perfectly tee up the legal issue that will mandate the outcome of this entire case: the severability (or inseverability) of section 16-120-802(a) from section 11-5-117.[37]  And both the Supreme Court of the United States and the Eighth Circuit have made quite plain that "[t]he issue of severability is one of state law."[38]  Below, the Court fleshes out the legal issues involved and explains why it cannot make an educated prediction as to how the Supreme Court of Arkansas would rule on the dispositive issue presented here.

## DISCUSSION

In 2017, the Arkansas General Assembly passed, and the Arkansas Governor signed, Act 1071.[39]  The Act plainly expressed its intent: "It is the intent of this act to reinforce and protect the right of each citizen to lawfully transport and store a handgun within his or her private motor vehicle for lawful purposes in any place where the private motor vehicle is otherwise permitted to be located."[40]  The Act added an exception to the list of prohibited places where a person with a

---

United States Constitution, the state law must give way to the federal law. *See, e.g.*, *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 621 (2011).

[34] *See* Answer and Countercl. (Doc. 11) at 6–9.  *See generally* Def.'s Resp. to Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 16).

[35] *Compare* Br. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 15) at 13–15, *with* Answer and Countercl. (Doc. 11) at 6–7.

[36] Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 14).

[37] *See* Br. in Supp. of Pl.'s Mot. to Dismiss Def.'s Countercl. (Doc. 15) at 13–15.

[38] *Dakota, Minnesota & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 518 (8th Cir. 2004) (citing *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996).

[39] *See* Act 1071 of 2017.

[40] *Id*. § 1.

concealed carry permit could have a concealed handgun.[41] That exception was for "[a] parking lot of a private employer . . . ."[42] The exception only applied when the concealed carry licensee lawfully possessed the gun and stored the gun out of sight, inside a locked personal handgun storage container, and inside his locked private motor vehicle.[43]

The Act did other things as well, including giving private employers the ability to exclude such a gun under limited circumstances.[44] Most relevant here, the Act also created Arkansas Code Annotated section 16-120-802(a), which largely immunized private employers from civil liability resulting from or arising out of an employee's or other person's actions involving guns stored by an employee in his car in the employer's parking lot:

> 16-120-802. Possession of a concealed handgun in a parking lot.
>
> (a) A business entity, owner or legal possessor of property, or private employer is not liable in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 5-73-324(a) or from allowing a person to enter the private employer's place of business or parking lot under § 5-73-324(b), including without limitation the theft of a handgun from an employee's private motor vehicle, unless the business entity, owner or legal possessor of property, or private employer intentionally solicited or procured the other person's actions.
>
> (b) Employees shall, within twenty-four (24) hours of obtaining knowledge of a theft occurring on a private employer's private parking lot, report a handgun as lost or stolen to the private employer and a local law enforcement agency with jurisdiction.
>
> (c) A handgun possessed in a parking lot does not solely constitute a failure on the part of a private employer to provide a safe workplace.
>
> (d)(1) A private employer may terminate any employee for flagrantly or unreasonably displaying a handgun in plain sight of others at the private employer's place of business or in plain sight in an employee's motor vehicle.

---

[41] *Id*. § 2.

[42] *Id*.

[43] *Id*.

[44] *Id*. § 3.

> (2) A private employer may bring a civil action against an employee that knowingly display in a flagrant or unreasonable manner a handgun in plain sight of others at a private employer's place of business or in plain sight in an employee's motor vehicle, as described in § 16-118-113 except when an employee's display of a handgun is incidental and reasonably related to the transfer of the employee's handgun from his or her locked container located within the employee's motor vehicle to another part of the employee's motor vehicle or employee's person.[45]

In 2021, the Arkansas General Assembly passed, and the Arkansas Governor signed, Act 809.[46] As described above, this Act made two principal changes to Arkansas law: (1) removing the requirement that an employee have a concealed carry permit in order to avail himself of the parking-lot-gun-rights protection; and (2) removing the requirement of keeping the gun in a "locked personal handgun storage container[.]"[47] The Act did not materially alter the liability-immunity scheme set forth in section 16-120-802(a).[48]

There's lots of agreement in this case. Everyone agrees that Union Pacific is a private employer.[49] Everyone agrees that Union Pacific would thus be subject to Arkansas Code Annotated sections 11-5-117 and 16-120-802(a) in the absence of conflicting federal law.[50] Everyone agrees that FELA does not directly preempt section 11-5-117.[51] Everyone agrees that

---

[45] *Id.* § 5.

[46] *See* Act 809 of 2021.

[47] *Id.* §§ 1, 2, and 3.

[48] *See id.* § 5.  The only amendment to this section changed internal references of section 5-73-326(b) to section 11-5-117.

[49] *See* Compl. (Doc. 1) at 2–3; Answer and Countercl. (Doc. 11) at 7.

[50] *See* Compl. (Doc. 1) at 9–10; Answer and Countercl. (Doc. 11) at 7.

[51] *See* Br. in Supp. of Pl.'s Mot. to Dismiss (Doc. 15) at 13–15.  *See generally* Def.'s Resp. to Pl.'s Mot. to Dismiss (Doc. 16).

FELA preempts section 16-120-802(a) as applied to railroad companies.[52] All the action here is on the severability question.

Recently, Arkansas courts have treated the severability test as involving two factors: "(1) whether a single purpose is meant to be accomplished by the act and (2) whether the sections of the act are interrelated and dependent upon each other."[53] But this straight-forward articulation of the test masks significant nuances swimming just underneath the surface. First, some cases suggest the severability test should principally focus on whether an act would have been passed independent of the severed provision.[54] What weight, if any, does this consideration carry? And is it a sub-part of the two-factor analysis, or is it a third factor? Second, Arkansas cases suggest that the presence or absence of a severability clause is not dispositive, but it is relevant.[55] How non-dispositively relevant is the presence or absence of such a provision? Third, it is not clear whether the Supreme Court of Arkansas has addressed severability in circumstances like this one—when the offending provision is not facially invalid, but only invalid as applied to a very limited group. Does this change any of the severability analysis? Fourth and finally, the modern two-factor formulation of the test appears to be an encapsulation of (as opposed to replacement for) the long-standing and more complicated formulation of the severability analysis in Arkansas:

> An act may be unconstitutional in part and yet be valid as to the remainder. Many cases so hold, and the following quotation from Cooley's Constitutional

---

[52] *See* Br. in Supp. of Pl.'s Mot. to Dismiss (Doc. 15) at 11–13. At a minimum, Mr. Franklin has waived (or at least forfeited) any argument to the contrary by not raising it in his Response to the Plaintiff's Motion to Dismiss (Doc. 16). *See supra* note 33.

[53] *Thurston v. Safe Surgery Arkansas*, 2021 Ark. 55, at 22, 619 S.W.3d 1, 15. *See also Hobbs v. Jones*, 2012 Ark. 293, at 16–17, 412 S.W.3d 844, 855; *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 268, 872 S.W.2d 349, 357 (1994).

[54] *See U.S. Term Limits, Inc.*, 316 Ark. at 269, 872 S.W.2d at 358. *See also Weiss v. Geisbauer*, 363 Ark. 508, 515, 215 S.W.3d 628, 633 (2005); *Borchert v. Scott*, 248 Ark. 1041, 1050-J, 460 S.W.2d 28, 38 (1970) (supplemental opinion on grant of rehearing) (quoting *Ex parte Levy*, 204 Ark. 657, 163 S.W.2d 529, 531 (1942)) (internal quotation marks omitted).

[55] *See, e.g.*, *U.S. Term Limits, Inc.*, 316 Ark. at 268, 872 S.W.2d at 358.

> Limitations appearing in the case of *Oliver v. Southern Trust Co.*, 138 Ark. 381, 212 S.W. 77, 78, has been many times approved by this court: . . . Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them. Cooley's Constitutional Limitations, 6th ed., p. 210. This rule has been followed in innumerable cases in the various courts, and by this court in the following cases: *Little Rock & Ft. Smith Rd. Co. v. Worthen*, 46 Ark. (312), 329; *State v. Marsh*, 37 Ark. 356; *State v. Deschamp*, 53 Ark. 490, 14 S.W. 653; *Cribbs v. Benedict*, 64 Ark. 555, 44 S.W. 707; *Wells Fargo & Co., Express v. Crawford County*, 63 Ark. 576, 40 S.W. 710, 37 L.R.A. 371.[56]

This more unwieldy formulation of the test—which seems to reflect the practical application of the slimmer-worded test set out in the more modern cases—is essentially a

---

[56] *Borchert*, 248 Ark. at 1050-H–J, 460 S.W.2d at 37–38 (supplemental opinion on grant of rehearing) (quoting *Ex parte Levy*, 204 Ark. at 163 S.W.2d at 531) (internal quotation marks omitted).

totality-of-the-circumstances analysis. Its application is highly fact-dependent and makes predicting the outcome of that analysis in close cases incredibly difficult.

And, to be clear, this is a close case. On the one hand, the liability-immunity provisions were passed in the same Act that created the employee gun rights protections; there was no severability clause in the Act; and records of the legislative process reveal an intentional effort to add the liability-immunity provision to the original Bill (which initially only addressed employee gun rights) before passage of the Act.[57] On the other hand, the General Assembly made very clear—in the text of the Act itself—that its primary (if not exclusive) purpose was "to reinforce and protect the right of each citizen to lawfully transport and store a handgun within his or her private motor vehicle for lawful purposes in any place where the private motor vehicle is otherwise permitted to be located."[58]

In light of this clear and plain text, it is hard to imagine that the General Assembly considered the liability-immunity provisions of the Act to be of equal importance to the gun rights protections, or of such importance that the granting of such gun rights would be wholly conditional upon the viability of the liability-immunity provisions.[59] Moreover, although it might not be a preferred reality for Union Pacific, the gun protections can exist—grammatically and functionality—even where the immunity provisions do not apply.[60] The two provisions are not, strictly speaking, dependent upon each other.[61] But whether they are so interrelated as to make them inseverable is in the eye of the beholder. And that question is really just the flip side of

---

[57] *See* Act 1071 of 2017; Amend. 1 to S.B. 37, 91st General Assem., Reg. Sess. (Ark. 2017).

[58] Act 1071 of 2017 § 1.

[59] *See id*.

[60] *See U.S. Term Limits, Inc.*, 316 Ark. at 268–69, 872 S.W.2d at 358.

[61] *See id.*; *Safe Surgery Arkansas*, 2021 Ark. 55, at 23–24, 619 S.W.3d at 16.

12

whether there was one united purpose for the Act—a purpose that can't be fairly broken down into discrete and severable chunks—or whether the Act had several purposes that might have had a common theme but not a single, unbreakable purpose.  Again, eye of the beholder.

Here, the most appropriate beholder is the Supreme Court of Arkansas.  None of the Supreme Court's prior applications of the severance test allow this Court to reliably predict how the Supreme Court of Arkansas would rule in this case.  The Supreme Court has not addressed the severability of these statutes.  Nor has it addressed the validity of these statutes in such a way that would provide guidance here.  As to the severability analyses conducted with respect to other statutes, they don't provide the apples-to-apples comparison (or even an apples-to-oranges comparison) that this Court would need to make a thoughtful prediction.

## CONCLUSION

The Court certifies to the Supreme Court of Arkansas the question set forth on page three *supra*.  As noted there, the Supreme Court of Arkansas may reformulate the question.  The Court stays the pending Motion to Dismiss until 30 days after the Supreme Court of Arkansas (1) denies the certification request or (2) answers the certified question.  The parties must file a joint notice with this Court immediately after either (1) or (2) occurs.  In accordance with the Supreme Court of Arkansas's Rules governing certified questions, the Court provides below the names, addresses, phone numbers, and email addresses of the counsels of record for each party.  There are no parties appearing without counsel.

*For Union Pacific Railroad Company, Plaintiff/Counter-Defendant*:

> Joseph P. Sirbak, II
> Cozen O'Connor
> 1650 Market Street
> Suite 2800
> Philadelphia, PA 19103
> 215-665-4634

13

jsirbak@cozen.com

Michael J. Mills
Union Pacific Railroad
1400 Douglas Street
Omaha, NE 68179
402-544-0441
mjmills@up.com

Robert S. Hawkins
Cozen O'Connor
1650 Market Street
Suite 2800
Philadelphia, PA 19103
215-665-2015
rhawkins@cozen.com

Cynthia W. Kolb
Cross, Gunter, Witherspoon & Galchus, P.C.
Post Office Box 3178
Little Rock, AR 72203
501-371-9999
ckolb@cgwg.com

*For Randy Franklin, Defendant/Counter-Claimant*:

William Whitfield Hyman
King Law Group
300 North Sixth Street
Fort Smith, AR 72908
479-318-0345
william.hyman@gmail.com


IT IS SO ORDERED this 26th day of September 2023.

                                                        _____
                                                        LEE P. RUDOFSKY
                                                        UNITED STATES DISTRICT JUDGE