**MANDATE**

**CERTIFIED QUESTION ANSWERED**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 2 2024

TAMMY H. DOWNS, CLERK

By: _____
                        DEP CLERK

PROCEEDINGS OF MAY 2, 2024

SUPREME COURT CASE NO. CV-23-653

UNION PACIFIC RAILROAD COMPANY                                    PETITIONER

V. ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT,
   EASTERN DISTRICT OF ARKANSAS (4:22-CV-00960)

RANDY G. FRANKLIN                                                 RESPONDENT


    THIS CERTIFIED QUESTION OF LAW WAS SUBMITTED TO THE ARKANSAS SUPREME COURT ON THE CERTIFICATION ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS AND BRIEFS OF THE RESPECTIVE PARTIES. AFTER DUE CONSIDERATION, IT IS THE DECISION OF THE COURT THAT THE CERTIFIED QUESTION IS ANSWERED FOR THE REASONS SET OUT IN THE ATTACHED OPINION.
    KEMP, C.J., AND BAKER AND HUDSON, JJ., DISSENT.


    IN TESTIMONY, THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE JUDGMENT OF THE ARKANSAS SUPREME COURT, I, KYLE E. BURTON, CLERK, SET MY HAND AND AFFIX MY OFFICIAL SEAL, ON THIS 18TH DAY OF JULY, 2024.

_____
KYLE E. BURTON, CLERK

# FORMAL ORDER

STATE OF ARKANSAS,    )
                     )
SUPREME COURT         )

**BE IT REMEMBERED,** THAT A SESSION OF THE SUPREME COURT BEGUN AND HELD IN THE CITY OF LITTLE ROCK, ON JULY 18, 2024, AMONGST OTHERS WERE THE FOLLOWING PROCEEDINGS, TO-WIT:

SUPREME COURT CASE NO. CV-23-653

UNION PACIFIC RAILROAD COMPANY                           PETITIONER

V. FROM THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
    ARKANSAS – 4:22-CV-00960

RANDY G. FRANKLIN                                        RESPONDENT

PETITIONER'S PETITION FOR REHEARING IS DENIED.  KEMP, C.J., AND BAKER AND HUDSON, JJ., WOULD GRANT.

IN TESTIMONY, THAT THE ABOVE IS A TRUE COPY OF THE ORDER OF SAID SUPREME COURT, RENDERED IN THE CASE HEREIN STATED, I, KYLE E. BURTON, CLERK OF SAID SUPREME COURT, HEREUNTO SET MY HAND AND AFFIX THE SEAL OF SAID SUPREME COURT, AT MY OFFICE IN THE CITY OF LITTLE ROCK, THIS 18TH DAY OF JULY, 2024.

_____
                                CLERK

ORIGINAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS

CC: CYNTHIA W. KOLB
    W. WHITFIELD HYMAN
    HON. LEE P. RUDOFSKY, UNITED STATES DISTRICT JUDGE

# SUPREME COURT OF ARKANSAS
## No. CV-23-653

| | |
|---|---|
| | Opinion Delivered: May 2, 2024 |
| UNION PACIFIC RAILROAD COMPANY<br>       PLAINTIFF/<br>    COUNTERDEFENDANT<br><br>V.<br><br>RANDY G. FRANKLIN<br><br>        DEFENDANT/<br>     COUNTERCLAIMANT | CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT OF THE EASTERN DISTRICT OF ARKANSAS<br>[NO. 4:22-CV-00960-LPR]<br><br>HONORABLE LEE P. RUDOFSKY, JUDGE<br><br>CERTIFIED QUESTION ANSWERED. |

**BARBARA W. WEBB, Justice**

This case presents a question of law certified to this court by the United States District Court for the Eastern District of Arkansas. We accepted certification in accordance with Arkansas Supreme Court Rule 6-8. Our jurisdiction in this original action is pursuant to amendment 80, section 2(D)(3) of the Arkansas Constitution.

The certified question is as follows:

> Are the prohibitions in Arkansas Code Annotated section 11-5-117 severable from the liability-immunity provisions in section 16-120-802(a) such that section 11-5-117 would still apply when the liability-immunity provisions of section 16-120-802(a) cannot apply?

We answer in the affirmative—section 11-5-117 is not dependent on the liability-immunity provisions of section 16-120-802, and therefore, if the latter is preempted by the Federal Employers' Liability Act (FELA), section 11-5-117 is not likewise preempted.

I. *Background Information*

Randy G. Franklin is a long-time employee of Union Pacific Railroad Company (Union Pacific). On August 3, 2020, Franklin arrived at work with a gun in his vehicle. In full compliance with Arkansas Code Annotated section 5-73-324 (Supp. 2023), Franklin kept the gun in a locked container, inside his locked truck, out of plain view. However, Franklin's truck was parked in a parking lot owned by his employer, Union Pacific, which has a company policy that bans employees from carrying firearms onto its property.

Franklin's truck caught on fire, and as a result, Union Pacific discovered that Franklin had a gun stored in his truck. Because he had violated its firearm policy, Union Pacific terminated Franklin. Subsequently, an arbitration panel reduced the termination to a lengthy suspension. Nonetheless, the arbitration panel made it clear that "it remains the firm position of [Union Pacific] that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted."

Franklin returned to work for Union Pacific in July 2022. He still wanted to bring his gun to work and keep it out of sight, in his locked vehicle, in Union Pacific's parking lot. Inspired by Franklin's plight, the Arkansas General Assembly passed Act 809 of 2021, reducing the restrictions on employees who keep guns in their cars while those cars are parked in a private employer's parking lot. The General Assembly removed the requirement of having a concealed-carry permit to exercise this right. The General Assembly also did

2

away with the requirement of keeping the gun in a locked storage container inside the car. The principal gun-rights protection at issue in this case was recodified as section 11-5-117.

In September 2022, Franklin's attorney sent Union Pacific a letter asking Union Pacific to "clarify its position in view of recently enacted Arkansas legislation." The letter described Arkansas Code Annotated section 11-5-117 and stated that, " [i]n view of these legislative developments, Mr. Franklin's position is that Union Pacific's policy [of no guns in vehicles parked in Union Pacific parking lots] would run afoul of A.C.A. 11-5-117." The letter sought assurances that Union Pacific agreed with Mr. Franklin's position.

Instead, Union Pacific filed a declaratory-judgment action in federal court. Primarily, it sought a declaration that "Ark. Code Ann. § 11-5-117 is preempted by [FELA] to the extent that it would apply to Union Pacific parking lots in Arkansas[.]" Franklin answered the complaint and brought a counterclaim seeking a declaratory judgment that Union Pacific must allow him to bring his firearm onto railroad property, as long as the firearm is legally possessed for a lawful purpose and stored out of sight in his locked car.

## II. *The Arkansas Statutes Under Consideration*

In 2017, the 91st General Assembly enacted Act 1071. Act 1071 included five sections. Section 1 of Act 1071 contained an uncodified statement of legislative intent:

> Legislative intent. It is the intent of this act to reinforce and protect the right of each citizen to lawfully transport and store a handgun within his or her private motor vehicle for lawful purposes in any place where the private motor vehicle is otherwise permitted to be located.

2017 Ark. Acts at 5877. Section 2 made conforming amendments to Arkansas Code Annotated section 5-73-306(18), concerning prohibited places for the carrying of a concealed handgun. *Id.* Section 3 added an entirely new section, 5-73-324, proscribing

3

employers from prohibiting concealed-carry licensees from possessing a firearm in the employer's parking lot, subject to certain restrictions and exceptions. *Id.* at 5878. Section 4 added a second, entirely new section, 16-118-113, creating a private right of action for knowing violations of section 5-73-324. *Id.* at 5881. Finally, section 5 added a third, entirely new section, 16-120-802, providing a broad-liability exemption for employers for actions arising from the new section 5-73-324. *Id.*

In 2021, the 93rd General Assembly enacted Act 809, titled

> AN ACT CONCERNING THE POSSESSION OR STORAGE OF A PERSON'S FIREARM WHEN A PERSON LEAVES HIS OR HER FIREARM INSIDE OF HIS OR HER CAR IN HIS OR HER EMPLOYER'S PARKING LOT; AND FOR OTHER PURPOSES.

2021 Ark. Acts at 3744. Act 809 contains five sections. Section 1 amended section 5-73-306, in pertinent part, by deleting reference to section 5-73-326 and substituting new section 11-5-117. *Id.* Section 2 repealed section 5-73-326 and section 3 added in its place new section 11-5-117. *Id.* at 3745. Section 11-5-117 differed from section 5-73-326 in several respects, including (1) its application to employees generally instead of only concealed-carry licensees and (2) removal of the requirement that a gun stored in an employer parking lot be locked within a "personal handgun storage container." *Id.* at 3748. Sections 4 and 5 of Act 809 made conforming amendments to Arkansas Code Annotated section 16-118-115 and section 16-120-802(a), replacing the previous references to section 5-73-326 with references to the new section 11-5-117. *Id.* at 3750.

4

III. *Discussion*

Neither party contends that federal law expressly preempts section 11-5-117 or its prior codification under section 5-73-324. However, Union Pacific asserts, and Franklin does not dispute, that Arkansas Code Annotated section 16-120-802, which immunizes employers from tort liability arising out of an employee exercising his or her right to conceal a handgun in a private vehicle parked on an employer's premises as allowed by section 11-5-117, is expressly preempted by FELA, codified at 45 U.S.C. §§ 51 et seq. Likewise, both parties cite and purport to rely on *Cotham v. Coffman*, 111 Ark. 108, 119, 163 S.W. 1183, 1186 (1914) (quoting *Cooley's Constitutional* Limitations 210 (6th ed.)), in which the court stated:

> [if two provisions] "are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."

However, that is where the parties' agreement ends.

Union Pacific argues that because section 16-120-802 was enacted at the same time as section 11-5-117, in Act 1071 of 2017, it cannot be severed. Citing *Borchert v. Scott*, 248 Ark. 1041, 460 S.W.2d 28 (1970), Union Pacific asserts that the "touchstone" for determining whether non-offending statutory provisions may be severed from unconstitutional provisions is legislative intent. It contends that in attempting to ascertain that intent, this court has considered two primary factors: (1) whether a single purpose is meant to be accomplished by the act; and (2) whether the sections of the act are interrelated and dependent upon each other. *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 268, 872

5

S.W.2d 349, 357 (1994). The *Hill* court further stated that "it is important whether the portion of the act remaining is complete in itself and capable of being executed wholly independent of that which was rejected." *Id.*, 872 S.W.2d 358. Union Pacific further quotes *Hill* for the proposition that "[t]he presence of a severability clause is a factor to be considered," but omits the rest of the quote in which the *Hill* court states "but, by itself, it may not be determinative." *Id.*

Union Pacific asserts that the severability factors weigh overwhelmingly, if not exclusively, in favor of finding that section 11-5-117 and section 16-120-802(a) are nonseverable because (1) both provisions were enacted by the General Assembly in the same bill, which did not pass until amended to include the liability shield; (2) the two provisions do not seek to accomplish distinct purposes, but instead are part of a common statutory scheme; and (3) the provisions are "interrelated and dependent," both logically and textually insofar as section 16-120-802(a) expressly refers back to section 11-5-117 and would be nonsensical standing alone. Union Pacific further asserts that the General Assembly opted not to include a severability provision in Act 1071, which is strong evidence of legislative intent against severability. Finally, Union Pacific argues that section 16-120-802(a) is designed as "compensation" or "consideration" for securing the passage of section 11-5-117; the latter potentially exposes employers to increased liability and the former exists to offset that liability. It thus concludes that following standard principles of severability under Arkansas law, section 11-5-117 and section 16-120-802(a) are nonseverable.

Franklin discounts that lack of a severability clause, asserting that Title 1 of the Arkansas Code has two severability clauses, Arkansas Code Annotated section 1-2-117[1] and section 1-2-205[2], that apply to all legislation. Furthermore, Franklin argues that sections 11-5-117 and 16-120-802 do not have a "shared, single purpose" as required by our case law. He notes that the very title of Act 809 proves this point; the clause "and for other purposes" evinces the fact that the Act does not have a single purpose, and use of the plural "purposes" makes this fact obvious.

IV. *Conclusion*

We find that while section 11-5-117 and section 16-120-802 were enacted by the passage of the same bill, section 11-5-117 is not dependent on section 16-120-802. The stated purpose of Act 809 is to safeguard the gun rights of employees who wish to safely store firearms, out of sight, in their locked vehicle at their place of employment. Section 16-120-802 covers a different subject: immunizing employers from liability that might arise from their employees exercising their gun rights. Union Pacific correctly notes that section 16-120-802 cites and relies on section 11-5-117, but this reliance is not reciprocal. We are mindful of Union Pacific's argument that, without section 16-120-802, section 11-5-117

---

[1] Except as otherwise specifically provided in this Code, in the event any title, subtitle, chapter, subchapter, section, subsection, subdivision, paragraph, subparagraph, item, sentence, clause, phrase, or word of this Code is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this Code which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this Code.

[2] The provisions of each and every act enacted by the General Assembly after July 24, 1973, are declared to be severable and, unless it is otherwise specifically provided in the particular act, the invalidity of any provision of that act shall not affect other provisions of the act which can be given effect without the invalid provision.

7

would not have garnered sufficient support to pass. However, while legislative history may be considered, we do so only if a statute is ambiguous, and the legislative intent is not apparent from the plain wording. *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335. Because the statutes are not ambiguous, we do not need to look beyond their plain wording to conclude that section 11-5-117 is severable from the liability-immunity provisions in section 16-120-802(a). Regardless of whether FELA preempts section 16-120-802(a), section 11-5-117 still applies.

Certified question answered.

KEMP, C.J., and BAKER and HUDSON, JJ., dissent.

# SUPREME COURT OF ARKANSAS
No. CV-23-653

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY<br>  PLAINTIFF/COUNTER-DEFENDANT<br><br>V.<br><br>RANDY G. FRANKLIN<br>  DEFENDANT/COUNTER-CLAIMANT | Opinion Delivered: May 2, 2024<br><br>CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS<br>[NO. 4:22-CV-00960-LPR]<br><br>HONORABLE LEE P. RUDOFSKY, UNITED STATES DISTRICT JUDGE<br><br><u>DISSENTING OPINION</u> |

JOHN DAN KEMP, Chief Justice

This court is called upon to answer a certified question from the United States District Court for the Eastern District of Arkansas. I would answer the certified question in the negative. Respectfully, I must dissent.

I. *Applicable Arkansas Statutes and Certified Question*

The following statutes are relevant to the certified question presented to this court. Arkansas Code Annotated section 16-120-802(a) (Supp. 2023) provides,

> A business entity, owner or legal possessor of property, or private employer is not liable in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 11-5-117 or from allowing a person to enter the private employer's place of business or parking lot under § 11-5-117, including without limitation the theft of a handgun from an employee's private motor vehicle, unless the business entity, owner or legal possessor of property, or private employer intentionally solicited or procured the other person's actions.

*Id.; see* Act of Apr. 21, 2021, No. 809, § 5, 2021 Ark. Acts 3750–51; Act of Apr. 6, 2017, No. 1071, § 5, 2017 Ark. Acts 5881–82 (referring to prior statute, Ark. Code Ann. § 5-73-324(a)–(b)).

Section 16-120-802(a) incorporates by reference Arkansas Code Annotated section 11-5-117 (Supp. 2023), which provides,

> (a)(1) As used in this section, "parking lot" means a designated area or structure or part of a structure intended for the parking of motor vehicles.
>
> (2)(A) "Parking lot" does not include a parking lot owned, maintained or otherwise controlled by the Department of Corrections or an entity contracting with a division of the department to provide work release or post-incarceration housing services.
>
> (B) The department will notify annually any entity subject to this provision of its applicability.
>
> (b) A private employer shall not prohibit an employee from transporting or storing a legally owned firearm in the employee's private motor vehicle in the private employer's parking lot when the firearm is:
>
> (1) Lawfully possessed; and
>
> (2) Stored out of sight inside a locked private motor vehicle.
>
> (c) A private employer shall not prohibit or attempt to prevent an employee from entering the parking lot of the private employer's place of business because the employee's private motor vehicle contains a firearm if the firearm is:
>
> (1) Kept for lawful purposes; and
>
> (2) Stored out of sight inside a locked private motor vehicle.
>
> (d) An employer has the right to:
>
> (1) Prohibit a person who is not an employee from storing a firearm in an employee's motor vehicle in the private employer's parking lot; and

   (2) Prohibit an employee entering the private employer's place of business or parking lot because the employee's private motor vehicle contains a firearm in the following circumstances:

   (A) The parking lot is on the grounds of an owner-occupied single-family detached residence or a tenant-occupied single-family detached residence and the single-family detached residence or tenant-occupied single-family detached residence is being used as a residence;

   (B) The private employer reasonably believes that the employee is in illegal possession of the firearm;

   (C) The employee is operating a private employer-owned motor vehicle during and in the course of the employee's duties on behalf of the private employer, unless the employee is required to transport or store a firearm as part of the employee's duties;

   (D) The private motor vehicle is not permitted in the parking lot for reasons unrelated to the employee's transportation, storage, or possession of a firearm;

   (E) The employee is the subject of an active or pending employment disciplinary proceeding; or

   (F) The employee has been adjudicated mentally incompetent or not guilty in a legal proceeding by reason of mental disease or defect.

   (e) This section does not prevent a private employer from prohibiting a person who fails to transport or store the firearm in accordance with subsection (b) of this section from transporting or storing a firearm in the private employer's parking lot or from entering the private employer's place of business or the private employer's parking lot.

   (f) A former employee who possesses a firearm in his or her private motor vehicle under this section is not criminally liable for possessing the firearm in his or her private motor vehicle in his or her former private employer's parking lot while the former employee is physically leaving the private employer's parking lot immediately following his or her termination or other reason for ceasing employment with the former private employer.

*Id.*; *see* Act of Apr. 21, 2021, No. 809, § 3, 2021 Ark. Acts 3748–50.

   The pending certified question before this court is as follows:

3

Are the prohibitions in Arkansas Code Annotated section 11-5-117 severable from the liability-immunity provisions in section 16-120-802(a) such that section 11-5-117 would still apply when the liability-immunity provisions of section 16-120-802(a) cannot apply?

## II. *Statutory Interpretation*

In answering the certified question, I rely on this court's well-established case law concerning statutory interpretation. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Miss. River Transmission Corp. v. Weiss*, 347 Ark. 543, 550, 65 S.W.3d 867, 872–73 (2002). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Thomas v. Hall*, 2012 Ark. 66, at 5, 399 S.W.3d 387, 390. Moreover, statutes relating to the same subject should be read in a harmonious manner if possible. *Thomas v. State*, 349 Ark. 447, 454, 79 S.W.3d 347, 351 (2002). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Standridge v. State*, 2014 Ark. 515, at 9, 452 S.W.3d 103, 109. We seek to reconcile statutory provisions to make them consistent, harmonious, and sensible. *Brock v. Townsell*, 2009 Ark. 224, at 9, 309 S.W.3d 179, 186.

To determine whether the invalidity of a provision in an act is fatal to the entire legislation, we look to (1) whether a single purpose is meant to be accomplished by the act and (2) whether the sections of the act are interrelated and dependent on each other. *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 22, 619 S.W.3d 1, 15. The mere fact that an act contains a severability clause is to be considered but is not alone determinative. *Id.* at 23, 619 S.W.3d at 15–16. We have explained that if two provisions "are so mutually

4

connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." *Cotham v. Coffman*, 111 Ark. 108, 119, 163 S.W. 1183, 1186 (1914) (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 210 (6th ed.)).

Turning to the certified question before this court, the plain language of the statutes is clear: section 11-5-117 creates a statutory right for employees of private employers in certain circumstances while section 16-120-802(a), which references section 11-5-117, immunizes those employers from liability when employees exercise that right.

Moreover, the legislative intent reflects that these two sections jointly serve a single purpose and are interrelated and dependent on each other. First, in examining whether the acts contain a single purpose, we need look no further than the act itself. Act 809 of 2021 is titled, "AN ACT CONCERNING THE POSSESSION OR STORAGE OF A PERSON'S FIREARM WHEN A PERSON LEAVES HIS OR HER FIREARM INSIDE OF HIS OR HER CAR IN HIS OR HER EMPLOYER'S PARKING LOT; AND FOR OTHER PURPOSES." Section 3 of Act 809, codified at section 11-5-117, concerns those instances in which an employee may possess a firearm inside a car in his or her private employer's parking lot, while Section 5 of Act 809, codified at section 16-120-802(a), provides immunity from liability for those Arkansas employers. These sections demonstrate that the unified purpose underlying the Act is to establish a balance between the interests of employees of private employers in possessing

5

firearms in their personal vehicles in a private employer's parking lot and the interests of private employers in avoiding increased liability associated with permitting employees to possess firearms on their property. To illustrate, prior to the enactment of Act 1071 of 2017—from which the language of sections 16-120-802(a) and 11-5-117 originated—Senate Bill 37 merely concerned the right of an employee to possess a legally owned handgun in a private employer's parking lot. In the original version of the bill, there was no provision that afforded private employers immunity from liability, and Act 1071 was passed by the General Assembly only after the bill had been amended to include the immunity provision of section 16-120-802(a). The legislative history therefore demonstrates that section 16-120-802 was enacted to strike a balance between the interests of employees of private employers and the private employers themselves. Second, while not alone determinative, the General Assembly did not include a severability clause in either Act 1071 of 2017 or Act 809 of 2021, thereby suggesting its legislative intent to pass the act as a whole. Thus, I conclude that the subsections are interrelated, dependent on each other, and should not be severed.

Accordingly, in my view, sections 16-120-802(a) and 11-5-117 should be read and interpreted harmoniously, and this certified question should be answered in the negative—that section 11-5-117 is not severable from section 16-120-802(a), and section 11-5-117 would not apply when, for rail carriers only, section 16-120-802(a) cannot apply. Therefore, I dissent.

BAKER and HUDSON, JJ., join.

IN TESTIMONY, That the above is a true copy of the order of said Supreme Court filed in the case therein stated, I, Kyle E. Burton, Clerk of said Supreme Court, hereunto set my hand and affix the Seal of said Supreme Court, at my office in the City of Little Rock this 18th day of July, A.D. 2024.

_____  
**Clerk**

By _____  
**Deputy Clerk**