**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | C.A. 4:22-cv-960-LPR |
| v.    ) | |
| ) | |
| RANDY G. FRANKLIN,    ) | |
| ) | |
| Defendant.    ) | |

**DECLARATION OF REBECCA CATES**

I, Rebecca Cates, do hereby depose and say as follows:

1.      My name is Rebecca Cates.  I am employed by Union Pacific Railroad Company ("Union Pacific") as Director of Labor Relations.  I am authorized to make this Declaration on behalf of Union Pacific and I make this Declaration based on personal knowledge.

2.      I have served as Director of Labor Relations since 2019.  I previously worked in other roles in Union Pacific's Labor Relations Department since 2011.  In that capacity, I have become knowledgeable concerning Union Pacific's work rules and Union Pacific's collective bargaining agreements with the labor organizations representing its employees.

3.      Randy G. Franklin was employed by Union Pacific as a railroad conductor up until September 12, 2024, at which time he was dismissed from employment for unrelated disciplinary infractions.  Mr. Franklin was removed from service on August 14, 2024, pending an investigation into his conduct.  Mr. Franklin was formally charged in the disciplinary proceeding on August 23, 2024.  In the freight railroad industry, conductors and other associated "ground service" train crew employees such as brakemen and switchmen are often referred to collectively

as "trainmen."  On Union Pacific, as on most large U.S. freight railroads, railroad conductors/trainmen are represented by a labor organization called International Association of Sheet Metal, Air, Rail, and Transportation Workers, Transportation Division ("SMART-TD").

4.    Before 2008, SMART-TD was known as the United Transportation Union ("UTU"), when it merged with the Sheet Metal Workers' International Association.  In turn, the former UTU was the product of the merger of multiple formerly separate railroad unions that represented various "ground service" crafts in connection with the operation of freight trains.

5.    SMART-TD represents all of Union Pacific's employees who are employed as conductors/trainmen.  A separate railroad labor organization, the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), represents the employees who operate the locomotives on freight trains by using throttles, braking mechanisms and the like.

6.    Under a 1985 agreement, new locomotive engineers come from the ranks of the conductor/trainmen craft.  Because newly promoted locomotive engineers have low seniority in the engineer craft, they sometimes exercise their retained conductor seniority to take jobs as conductors when they do not have enough seniority to hold positions as engineers.  Because of this "ebb and flow" of employees between the two train and engine service crafts, the RLA allows employees in either train and engine service craft (conductors and engineers) to satisfy their obligation to pay union dues by paying dues to either of the unions, national in scope, that represent train and engine service employees.  45 U.S. Code § 152 Eleventh (c).

7.    Although the RLA allows train and engine service employees to pay union dues to either SMART-TD or to BLET, SMART-TD is the *exclusive* representative of all railroad conductors employed by Union Pacific.  As to railroad conductors, Union Pacific cannot

2

lawfully negotiate collective bargaining agreements with BLET or any other union; nor may Union Pacific negotiate collective bargaining agreements with individual employees.

8.     SMART-TD enjoys the federally conferred status as "exclusive" representative.

9.     The collective bargaining agreements between SMART-TD and Union Pacific include both express and implied terms.  Among those implied terms is the ability of Union Pacific to implement work rules governing the conduct of Union Pacific's union-represented employees.

10.     Union Pacific has two work rules that prohibit employees from bringing firearms onto Union Pacific Property:  First, Union Pacific, like nearly 400 other railroads, follows the General Code of Operating Rules ("GCOR").  Since at least 2000, GCOR Rule 1.12 has remained unchanged and has provided unambiguously that "[w]hile on duty or on railroad property, employees must not have firearms …"  A true and correct copy of GCOR Rule 1.12 is attached hereto as Exhibit A.

11.     Second, since at least 2003, Union Pacific has maintained a Violence and Abusive Behavior in the Workplace Policy ("Workplace Violence Policy").  The Workplace Violence Policy has been amended from time to time but has consistently prohibited employees, other than Union Pacific Police, from possessing weapons, including firearms, while on Union Pacific property, even if the employee is licensed to carry a concealed handgun under state law.  For example, the 2003 Workplace Violence Policy, a true and correct copy of which is attached hereto as Exhibit B, states that "Union Pacific employees … are prohibited from possessing or hiding weapons on their person and their vehicle while on Union Pacific property. This prohibition applies even if the individual is licensed to carry a handgun under state law."   The 2015 Workplace Violence Policy, a true and correct copy of which is attached hereto as Exhibit

3

LEGAL\73059863\1

C, states that employees are prohibited from "possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons … . This prohibition applies even if the individual is licensed to carry a concealed handgun under state law." Even earlier, Union Pacific enforced its substantially similar "Rule 603" which prohibited employees from having firearms in their possession or while on company property.

12. At no time has SMART-TD successfully challenged Union Pacific's rules prohibiting firearms as a violation of any collective bargaining agreement between SMART-TD and Union Pacific. Nor has SMART-TD negotiated, through collective bargaining, a limitation on Union Pacific's firearms rules in any of the successive collective bargaining agreements that SMART-TD or its predecessors have negotiated. On the contrary, Union Pacific has enforced that prohibition and has successfully defended labor arbitrations involving discipline of Union Pacific conductors who violate Union Pacific's firearms prohibition.

13. In negotiating successive amendments to its collective bargaining agreements with Union Pacific, SMART-TD has acquiesced in Union Pacific's work rule against carrying firearms onto Carrier property.

14. In the case of Mr. Franklin, Union Pacific's firearms prohibition was enforced in a labor arbitration award in which the arbitration panel enforced a year-and-a-half unpaid suspension of Mr. Franklin for his admitted violation of Union Pacific's rules. In an Award issued April 20, 2022, a true and correct copy of which is attached hereto as Exhibit D, the Public Law Board sustained discipline against Mr. Franklin and specifically cautioned him that Union Pacific would continue to maintain and enforce its zero-tolerance policy regarding firearms on company premises. By sustaining discipline against Mr. Franklin, the arbitration

4

panel necessarily concluded that the collective bargaining agreement agreed to by SMART-TD authorized Union Pacific to prohibit firearms on its property.

I have read the foregoing declaration, and I swear that it is true and correct under penalty of perjury under the laws of the United States of America.

Executed this 26th day of September, 2024.

_Rebecca Cates_

Rebecca Cates

LEGAL\73059863\1

**EXHIBIT A**

## 1.12    Weapons

While on duty or on railroad property, employees must not have firearms or other deadly weapons, including knives with a blade longer than 3 inches. However, railroad police are authorized to possess firearms in the course of their work.

## 1.13    Reporting and Complying with Instructions

Employees will report to and comply with instructions from supervisors who have the proper jurisdiction. Employees will comply with instructions issued by managers of various departments when the instructions apply to their duties.

## 1.14    Employee Jurisdiction

Employees are under the jurisdiction of the supervisors of the railroad they are operating on.

When operating on another railroad, unless otherwise instructed, employees will be governed by:

• Safety rules, air brake and train handling rules, and hazardous materials instructions of the railroad they are employed by.

• The operating rules, timetable and special instructions of the railroad they are operating on.

## 1.15    Duty—Reporting or Absence

Employees must report for duty at the designated time and place with the necessary equipment to perform their duties. They must spend their time on duty working only for the railroad. Employees must not leave their assignment, exchange duties, or allow others to fill their assignment without proper authority. Continued failure by employees to protect their employment will be cause for dismissal.

## 1.16    Subject to Call

Employees subject to call must indicate where they can be reached and must not be absent from their calling place without notifying those required to call them.

## 1.17    Hours of Service Law

Employees must be familiar and comply with the requirements of the federal hours of service law. Employees are expected to use off-duty time so they are prepared for work.

If an employee is called to report for duty before legal off-duty time has expired, before accepting the call to work, the employee must notify the individual making the call that off-duty time has not expired.

### A.    Notification

When communication is available, employees must notify the train dispatcher or another authority of the time the law requires them to be off duty. Employees must provide notification early enough that they may be relieved, or transportation provided, before they exceed the hours of service.

### B.    Exceeding the Law

Employees must not exceed the hours of service law without proper authority. However, they must not leave trains, engines, or cars on the main track without proper protection. Employees must secure trains properly and, if possible, before they exceed the hours of service. Except as provided by this paragraph, employees are then relieved of all duties.

## 1.18    Unauthorized Employment

Employees must not engage in another business or occupation that would create a conflict of interest with their employment on the railroad or would interfere with their availability for service or the proper performance of their duties.

**EXHIBIT B**

# UPRR HR Policy Manual

## Violence and Abusive Behavior in the Workplace

**Revised 11/11/2003**

## Policy

**Union Pacific is committed to maintaining a safe work environment free of all forms of violence, including verbal and physical threats. The Company has a zero tolerance policy with respect to all forms of violence in the workplace. It is our firm belief that a safe and secure work environment free from violence is fundamental to all employees, customers, contractors, vendors guests or members of the public.**

## Guidelines

### Prohibited Behavior

The Company will not tolerate or condone any form of threats or violence committed by or against U.P. employees, contractors, customers/clients, vendors, suppliers or visitors on U.P. premises or through Union pacific communications equipment, nor will Union Pacific tolerate or condone any forms or threats of violence by U.P. employees while engaged in business on behalf of Union Pacific.

For examples of behaviors deemed as prohibited conduct, please see Attachment A.

### Weapons

Union Pacific employees and all others on Company property or involved in Company business off the premises are prohibited from possessing or hiding weapons on their person and their vehicle while on Union Pacific property. This prohibition applies even if the individual is licensed to carry a concealed handgun under a state law. Only UPRR Police and on-duty law enforcement officers acting in an official capacity are authorized to possess weapons on company property.

For the purposes of this policy, a "weapon" shall mean any weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury.

### Reporting Violations

Under this policy, any person who believes that he or she is being subjected to any form of threat or violence, or is aware of such prohibited conduct directed toward another person, has a responsibility to report the matter immediately. Employees **MUST** come forward as soon as possible when violations occur or there is a need for further information or assistance. Any alleged policy violations will be investigated, maintaining confidentiality to the fullest extent consistent with a thorough investigation.

- Anyone who has experienced, witnessed, or has knowledge of any prohibited conduct must report the incident as soon as possible to the Response Management Communication Center (RMCC) at 888-877-7267 (888-UPRR-COP) and a management supervisor. If an emergency situation exists, contact a local law enforcement agency immediately, and then, when time and

circumstances permit, report the incident to the Response Management Communication Center (RMCC) at 888-877-7267.

- Employees should report situations that have the potential for workplace violence to the Risk Management Communication Center at 888-877-7267.

## Violations of Policy

Violations of this policy will be grounds for 1) an individual's immediate removal from Company property, 2) disciplinary action up to and including termination of employment with the Company, and/or 3) possible civil or criminal prosecution. Immediately following notice to the Company that a violation of this policy has occurred, an investigation will be initiated and such action taken as the Company deems appropriate in its sole discretion.

## Additional Information:

- Contact the Response Management Communication Center (RMCC) at 888-877-7267.
- Training
- To obtain copies of the training module (PINS Code SFW2), please call 8-271-5963.
- For information on how to complete the training via an interactive web-based product, please call 8-271-5963.
- For examples of behaviors deemed as prohibited conduct, see Attachment A.

# Violence and Abusive Behavior in the Workplace - Attachment A
## Prohibited Conduct

Union Pacific will not tolerate or condone any forms of threats or violence committed by or against U.P. employees, contractors, customers/clients, vendors, suppliers, or visitors on U.P. premises or through Union Pacific communications equipment, nor will Union Pacific tolerate or condone any forms of threats or violence by U.P. employees while engaged in business on behalf of Union Pacific.

This list of behaviors, while not inclusive, provides examples of conduct that is prohibited:

- Causing physical injury to another person
- Possession of a weapon while on Company property or while on Union Pacific business
- Fighting, hitting, biting, kicking, pushing, or shoving another person
- Threatening, intimidating, bullying, or abusing another person
- Aggressive or hostile behavior that creates a reasonable fear of injury to another person
- Intentionally damaging Company property or property of another employee on workplace premises
- Committing acts motivated by, or related to, domestic violence on Union Pacific premises
- Bothering someone by following or with an excessive number of unwelcome visits, calls, pages, faxes, emails, letters, or gifts

Case 4:22-cv-00960-LPR    Document 52-1    Filed 09/27/24    Page 11 of 22

- Lewd behavior or obscene phone calls, pages, faxes, emails, letters, gifts, or graffiti

Anyone who has experienced, witnessed or has knowledge of any prohibited conduct must report the incident at once to the Response Management Communication Center (RMCC) at 888-877-7267.

**If you would like to print a hard copy of the Workplace Violence Flyer, double click the icon below.**



C31318_WorkPlacevioFly.pdf

# EXHIBIT C



# UNION PACIFIC RAILROAD
## Policy to Address Violence and Abusive Behavior in the Workplace

Revised May 11, 2015

# Policy

## Purpose

Union Pacific is committed to maintaining a safe work environment free of all forms of violence, including verbal and physical threats. The Company has a zero tolerance policy with respect to all forms of violence in the workplace. This policy applies to all employees, customers, contractors, vendors, visitors, or any individual on Union Pacific property. Individuals subject to this policy are also responsible for compliance with applicable state and federal laws.

## Prohibited Behavior

The Company will not tolerate or condone any form of violence or threats of violence committed by or against its employees, contractors, customers/clients, vendors, suppliers, or visitors in the course of conducting business, while on Company property, traveling on Company business, or when using the Company's computer network, systems or equipment. Company policy related to its computer and communications network is more fully explained in separate policies, including but not limited to the **Information Security Policy**, **Wireless Communications Devices Policy** and **Social Media Policy**.

## Weapons

Union Pacific employees and all other individuals on Company property or involved in Union Pacific business off Company property are prohibited from possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons, which includes but is not limited to grips, suitcases, gym bags and purses.  This prohibition applies even if the individual is licensed to carry a concealed handgun under state law. Only Union Pacific Police and on-duty law enforcement officers acting in an official capacity are authorized to possess weapons on Company property.

For purposes of this policy, a "weapon" shall mean any device, instrument, material or substance (animate or inanimate) that is used to threaten, or is capable of causing, death or bodily injury.  This prohibition includes but is not limited to firearms, knives with a blade longer than three inches, tasers, stun guns and pepper sprays.  Union Pacific Police are authorized to make the final determination of whether a particular item constitutes a weapon under this policy.

## Violations of Policy

Alleged violations of this policy will be investigated.  All proven violations of this policy will result in appropriate disciplinary action up to and including termination of employment with the Company, as well as possible civil or criminal prosecution when appropriate

## Policy

**Reporting Violations**

Anyone who has experienced, witnessed, or has knowledge of any prohibited conduct must report the incident as soon as possible to the Response Management Communication Center (RMCC) at 888-877-7267 (888-UPRR-COP) and a management supervisor.

If an emergency situation exists, contact a local law enforcement agency immediately and then, when time and circumstances permit, report the incident to the RMCC.

**Recognizing and Addressing Violent and Potentially Violent Behavior**

Actual threats should always be taken seriously and reported as described in this policy. This includes aggressive or hostile behavior that creates a reasonable fear of injury to another person.

When someone in the workplace is exhibiting behaviors that raise concerns about potentially violent behavior, you should trust your instincts and seek assistance.   Often, early intervention by a supervisor can help prevent escalation of troubling behavior or a troubling situation.

For guidance and assistance please initiate contact with your supervisor or another resource listed:

- Your Department HR Director
- Employee Assistance Program  Help Line 1- 800-779-1212
- EEO Hot Line at 866-877-3362
- Drug and Alcohol Info Help Line  1-800-840-3784
- Peer Support Help Line  1-800-877-5707
- Your local Occupational Health Nurse

Intervening early in a threatening or potentially violent situation is vital to preventing its escalation.  The employee FOCUS website provides additional information about how to recognize the early warning signs of potentially violent behavior.

**Additional Information**
Please direct any questions related to this policy to the Director Safety Initiatives at 402.544.5362
Training resources can be found in the Learning Management System by searching "Workplace Violence."

**EXHIBIT D**

**PUBLIC LAW BOARD NO. 7029**

SMART - TRANSPORTATION DIVISION  )
                                 )    **CASE NO. 200**
            v.                   )    **AWARD NO. 200**
                                 )
UNION PACIFIC RAILROAD COMPANY  )


**STATEMENT OF CLAIM:**

"Claim is on behalf of Conductor Randy G. Franklin for reinstatement of service, removal of discipline (for allegedly parking your car at the location of 1020 Vine Street North Little Rock, AR and you allegedly had a loaded firearm stowed in your vehicle while it was parked on company property.) from the personal record, the removal of EQMS notations, as well as restoration of point system, and pay for any and all time lost including time for attending investigation.  Claim includes payment for all wage equivalents to which entitled including vacation time; with all medical, surgical, life and dental benefits, and reimbursement for any expenditures to secure like or similar insurance coverage, and/or out-of-pocket medical expenses that were incurred because insurance coverage that lapsed as a result of the discipline."

**FINDINGS AND OPINION:**

Public Law Board No. 7029, upon the whole record and all the evidence, finds that the parties involved in this dispute are respectively Carrier and Employees within the meaning of the Railway Labor Act, as amended.  Parties to said dispute were given due notice of hearing thereon.

On August 21, 2020, the Claimant attended a formal hearing to develop the facts and determine his responsibility, if any, regarding a charge of allegedly having parked his car at the location of 1020 Vine Street, North Little Rock, AR, with a loaded firearm stowed in his vehicle while it was parked on company property.  The alleged incident occurred on August 3, 2020, at approximately 11:45 a.m., near Milepost 343.5, Hoxie Subdivision, while the Claimant was employed as a conductor.

By letter dated August 31, 2020, the Carrier notified the Claimant that the charge against him was sustained after careful consideration of the evidence adduced at the hearing.  The Claimant was assessed discipline of dismissal from all service with the Union Pacific Railroad for his violations of GCOR 1.12, *Weapons*;

**Public Law Board No. 7029**                                    **Award No. 200**
**Page 2**                                                       **Case No. 200**

and **Item 10-I:** *Union Pacific Railroad Policies – Policy to Address Violence &
Abusive Behavior in the Work Place*.

The Organization promptly appealed the Carrier's disciplinary action and
the parties ultimately conducted an on-property conference on the matter.  Unable
to reach a mutual resolution of the dispute, the parties brought this dispute properly
before the Board for final and binding adjudication.

The Board has carefully reviewed the investigation transcript and the full
record of this case as developed on the property.  We have considered the parties'
procedural arguments as set forth in their submissions at arbitration.  We find that
the Claimant was afforded all contractual due process rights, and that this matter is
procedurally sound in all respects.

On August 2, 2020, the Claimant was called for the conductor's position on
Train MASAR-10, which he and his crew operated from North Little Rock, AR to
Longview, TX.  On August 3, 2020, he and his crew were called at 12:00 p.m., for
Train DH35DU-03, his return assignment to North Little Rock.  Upon reporting for
duty on August 2, 2020, the Claimant parked his truck, a 2006 Chevy Avalanche, in
the Carrier's parking lot at 1020 Vine Street.  It is not disputed that the Claimant
left in the pocket behind the passenger seat a loaded handgun (9 mm Beretta) which
North Little Rock Police Department law enforcement personnel found when
investigating and extinguishing an electrical fire in the Claimant's truck.

A check of the firearm showed it properly registered to Claimant.  Law
enforcement determined that the Claimant possessed a valid concealed handgun
license and determined the Claimant had broken no Arkansas or city code
violations by leaving the firearm secured in the vehicle.  The Claimant was thus
advised he could retrieve the firearm from the North Little Rock Police
Department.  On August 6, 2020, the Carrier issued the Claimant a Notice of
Investigation, identifying GCOR 1.12 and Item 10-I of Union Pacific Policies,
quoted above, as among the rule and policy possibly violated by stowing a loaded
firearm in his vehicle while parked on company property.

GCOR 1.12 – *Weapons*, states:

While on duty or on railroad property, employees must not
have firearms or other deadly weapons, including knives with a blade
longer than 3 inches.  However, railroad police are authorized to
possess firearms in the course of their work.
Application:

**Public Law Board No. 7029**                                    **Award No. 200**
**Page 3**                                                       **Case No. 200**

**Also refer to UPRR Policy to Address Violence & Abusive Behavior in the Work Place.  Access the policy by using the link: http://home.www.uprr.com/emp/ec/policy/violence.shtml Rule Updated Date April 1, 2015**

**The relevant portions of the governing UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy, as revised on May 11, 2015, read in pertinent part:**

**Union Pacific is committed to maintaining a safe work environment free of all forms of violence, including verbal and physical threats.  The Company has a zero tolerance policy with respect to all forms of violence in the workplace.  This policy applies to all employees, customers, contractors, vendors, visitors, or any individual on Union Pacific property.  Individuals subject to this policy as also responsible for compliance with applicable state and federal laws.**

**\*       \*       \***

**Union Pacific employees and all other individuals on Company property or involved in Union Pacific business off Company property are prohibited from possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons, which includes but is not limited to grips, suitcases, gym bags and purses.  This prohibition applies even if the individual is licensed to carry a concealed handgun under state law.   Only Union Pacific Police and on-duty law enforcement officers acting in an official capacity are authorized to possess weapons on Company property.**

**For purposes of this policy, a "weapon" shall mean any device, instrument, material or substances (animate or inanimate) that is used to threaten, or is capable of causing, death or bodily injury.  This prohibition includes but is not limited to firearms, knives with a blade longer than three inches, tasers, stun guns and pepper sprays.  Union Pacific Police are authorized to make the final determination of whether a particular item constitutes a weapon under this policy.**

**Alleged violations of this policy will be investigated.  All proven violations of this policy will result in appropriate disciplinary action**

**Public Law Board No. 7029**                                        **Award No. 200**
**Page 4**                                                          **Case No. 200**

**up to and including termination of employment with the Company as well as possible civil or criminal prosecution when appropriate.**

**\*        \*        \***

**Arkansas Code A.C.A. § 5-73-326.** *Licensee rights – Private employer parking lot***. was in effect at the time of the incident.  It reads as follows:**

**(a) A private employer shall not prohibit an employee who is a licensee from transporting or storing a legal owned handgun in the employee's private motor vehicle in the private employer's parking lot when:**

**(1) The handgun:**

**(A) Is lawfully possessed;**

**(B) Is stored out of sight inside a locked private motor vehicle in the private employer's parking lot; and**

**(C)**
**(i) Is stored inside a locked personal handgun storage container that is designed for the safe storage of a handgun.**

**(ii) An employee is not required to store the handgun in the personal handgun storage container as required in subdivision (a)(1)(C)(i) of this section until he or she is exiting his or her private motor vehicle; and**

**(2) The employee has in his or her possession the key to the personal handgun storage container as required by subdivision (a)(1)(C)(i) of this section.**

**The Claimant testified that he habitually drove to work with the handgun in his car in order to feel safe while making the 80-mile commute between his residence and work location at North Little Rock.  The totality of his testimony further established he had completed the required training necessary for obtaining a concealed handgun carry license, and that it has never been his intent to use the handgun for illicit purposes at work, or to undertake an act of violence.  The Claimant submitted a letter of support from the Sheriff of Clark County, Arkadelphia, AR, where the Claimant has been a life-long resident, attesting to his impeccable character and excellent reputation with the community.  The Claimant as a longstanding employee of the Carrier, was periodically trained and qualified on**

**Public Law Board No. 7029**                                      **Award No. 200**
**Page 5**                                                          **Case No. 200**

the General Code of Operating Rules, including GCOR 1.12, and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy.

       The Board has carefully studied the extensive record regarding all substantive issues underlying this case.  We have carefully reviewed the Carrier's arguments as set forth during the on-property handling and in its written submission and during oral arguments before the Board.  We have afforded equal consideration to the Organization's position and arguments on the Claimant's behalf as conveyed throughout the on-property handling of this case and at arbitration.  The Organization's strong advocacy on behalf of the Claimant is well reflected in the record properly before this Board.

       The Board finds that the record contains substantial evidence in support of the Carrier's determinations that the Claimant violated GCOR 1.12 and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy by keeping a handgun in his vehicle while parked on company property.  Although the Claimant and Organization dispute the Carrier's right to enforce its rule and policy under Arkansas law as it pertains to employer parking lots, the Carrier's long-standing and well-promulgated rule and policy prohibiting bringing weapons to work, including stowing them in personal vehicles, addresses a conduct matter on which all employees, including the Claimant, have been consistently trained on as a means toward ensuring the Carrier's ability to maintain a safe work environment free of all forms of violence.

       As the Carrier argues, the GCOR 1.12, *Weapons*, falls within the Rule Category of Dismissible Offenses as specified in the well-promulgated MAPS Process Matrix (updated, November 1, 2019).  The Board finds that the Carrier has consistently enforced GCOR 1.12 and the Violence & Abusive Behavior Work Place Policy.  We are thus unwilling to interfere with the Carrier's administration and enforcement of this rule and policy as the Carrier deems appropriate.

       However, in this particular case the totality of the facts and circumstances and the Claimant's length of service and good record stand in mitigation of the discipline of discharge.  The Board rules that appropriate disciplinary action in this particular case falls short of permanent dismissal.

       Therefore, the Board holds that the instant claim shall be sustained in part.  The Claimant shall be reinstated to service, with seniority intact, but without back pay or benefits from the time withheld from service as a result of this incident until his reinstatement.  The Claimant's failure to have his firearm secured in a lock box, as required by Arkansas Code A.C.A. § 5-73-326 at the time of this incident, has not gone unnoticed by the Board, and contributes to our decision to deny back pay.

**Public Law Board No. 7029**                                    **Award No. 200**
**Page 6**                                                       **Case No. 200**

The Claimant should now be aware that it remains the firm position of this Carrier that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted.  The Claimant is reminded that the Carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced.

The Claimant's reinstatement is conditioned upon his satisfactory completion of the customary requirements for employees returning to service after a protracted period of absence.  The Carrier is directed to return the Claimant to service at the level of MAPS Training 1, with a 24-month retention period to end on August 3, 2022.

<u>**AWARD**</u>:

Claim sustained in accordance with the Findings.  The Carrier is ordered to comply with this Award within 30 days of its date.

_Lynette A Ross_
**Lynette A. Ross, Neutral Member**

_David L. Young_                               _Terry L. Dixon_
**David L. Young,**                            **Terry L. Dixon,**
**Carrier Member**                             **Employee Member**

**Dated:**    4/20/2022