**IN UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNION PACIFIC RAILROAD COMPANY PLAINTIFF**

**v. CASE NO. 4:22-CV-00960 (LPR)**

**RANDY G. FRANKLIN COUNTERCLAIMANT**

# **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes Randy Franklin, by and through his attorney W. Whitfield Hyman, and in support of his response to the Plaintiff's Motion for Summary Judgment, states the following:

For ease of communication, Plaintiff Union Pacific will generally be referred to as "the railroad" and SMART-TD will generally be referred to as "the union."

## A. Arkansas Code § 11-5-117 Is Not Preempted, As Applied to Union Pacific, by the Railway Labor Act.

The railroad's first argument is that because the union that represents Mr. Franklin did not negotiate with the railroad to specifically allow for a state statutory right to be respected, then Randy Franklin cannot sue under state law to enforce that statutory right. The railroad's argument is flawed for various reasons. The first of which, is that the railroad has consistently held that the statute does not

apply to them as a matter of law. The second reason is the statutory right in question was created in 2019. The last time the union meaningfully negotiated with the railroad was prior to this statutory right being created. The union could not reasonably negotiate with the railroad for a right that that had not yet been created. The third reason the railroad's argument is flawed is because a union does not have the power to negotiate away a state statutory right.

The Plaintiff relies upon Miller v. S.W. Airlines Co., 926 F.3d 898, 903 (7th Cir. 2019). In *Miller*, airlines were requiring employees to clock in with their fingerprints. Id. Illinois state law required notice of retention periods and other information to be given to the employees or authorized representatives. In Part, the airlines succeeded because they gave those notices to the union, an authorized representative of the individuals. "A state cannot remove a topic from the union's purview and require direct bargaining between individual workers and management." Id. That is not what the State of Arkansas did. The State of Arkansas removed the entire act of bringing a firearm and leaving it out of sight in your car on company property from the bargaining table completely. There is no bargaining allowed. The reasoning of the court in *Miller* according to plaintiff is two-fold:

"(1) the labor union representing Southwest Airlines employees had the legal authority to represent employees with respect to the use of their biometric information for timekeeping purposes," See page 10 of Doc. 53. This authority is statutory in the Illnois case, the authority is outlined in the contested statute. We do not have that here. The state of Arkansas grants the union no authority to negotiate this matter, and impliedly rejects it.

And:

"(2) the carrier had at least an "arguable" basis for its position that the union had consented to the use of such information by failing to prohibit such use in the collective bargaining agreement. Miller v. Southwest Airlines, Inc., 926 F.3d at 900." See Page 10-11 Doc. 53. However, the word "arguable" while appearing in quotes, is not in the opinion cited. These do not appear to be the basis for the court's opinion. The union cannot legally bind someone to forfeit a statutory right that is out of their purview.

Whether or not an employee has a firearm in his vehicle is not a "mandatory subject of bargaining" as outlined under federal law: "how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of bargaining. 45 U.S.C. § 152 First." Miller v. S.W. Airlines Co., 926 F.3d 898, 903 (7th Cir. 2019). "If we are wrong about how the Railway Labor Act affects collective bargaining over fingerprinting in the workplace, then the doctrine of complete preemption would not authorize removal of the suit against United." Miller v. S.W. Airlines Co., 926 F.3d 898, 905 (7th Cir. 2019).

The railroad wants to couch this in terms of a major or minor dispute of the collective bargaining agreement. However, this exists outside the collective bargaining agreement. There is no bargaining that can be done. The state of Arkansas removed that option from both sides so that employees would not lose their jobs or receive diminished compensation or retaliation for leaving their firearms in their vehicles. If the union and the railroad agreed that the employees could be paid less than the state mandated minimum wage, that would be an illegal and unenforceable agreement. That is what we have here, if the agreement even encompasses what we are doing.

Another difference with *Miller* is that the airlines were the defendants. The plaintiff employees sued the employers in court, and the defendants responded that

this should go to an arbitration board. However, in this case, the employee (Randy Franklin) wrote a letter and instead of taking the employee to the adjustment board, the railroad sued the employee in federal court. Now that the railroad is losing in court, they want to remove this case to an adjustment board that they could have initiated (and might still can initiate right now). The railroad does not get to initiate a suit in federal court and then cry foul when the tides turn against them. The Defendant employee does not object to this forum. The Plaintiff should have considered these alternatives prior to bringing suit.

If this is a right that can be negotiated away, then if the Court feels that the railroad should get two bites of the apple and the Plaintiff has not waived that right by bringing suit in federal court, the Court should order this case referred to an adjustment board. However, this is not a right that may be negotiated away. The railroad wants to characterize this as a major or minor contractual dispute about a bargaining agreement, however this case exists outside of bargaining agreements: For purposes of Railway Labor Act (RLA), "minor disputes" are controversies over meaning or application of existing collective bargaining agreement or employment practice in particular fact situation, while "major disputes" result from disagreement in bargaining process for new contract or over challenge in term of existing contract for pay, rules, and working conditions; when major dispute arises, neither party can alter status quo by striking or altering pay, or rules, or working conditions until parties have exhausted negotiation and arbitration procedures set up by RLA. CSX Transp. Inc. v. Marquar, C.A.6 (Ky.) 1992, 980 F.2d 359.

The RLA "requires disputes over the interpretation of a collective-bargaining agreement to go to arbitration." Avina v. Union P. R.R. Co., 72 F.4th 839, 842 (8th

Cir. 2023), cert. denied sub nom. Avina v. Union P. R.R., 144 S. Ct. 555 (2024). There is no interpretation question here, the rules outlined clearly prohibit carrying a firearm in the vehicle. However, those rules are clearly illegal. The collective bargaining agreement cannot agree to force people to work for less than minimum wage, it cannot agree to discriminate against employees on the basis of race, or any other statutorily illegal basis.

As far as Defense Counsel can see, these policies and handbook rules are not expressly a part of the collective bargaining agreement. This is not about the CBA, but about the law, and therefore outside the scope of the RLA. The general counsel for SMART-TD rejects that this issue has ever been negotiated between the two parties. See Defense Exhibit 1.

The railroad admits that this is not an issue covered by their collective bargaining agreement, see Doc. 53, pg. 15: "In this case, Union Pacific contends that SMART-TD, in the exercise of the union's authority as representative of its members, has acquiesced in Union Pacific's promulgation of work rules prohibiting employees from carrying firearms onto Union Pacific property, and that this established past practice **is an implied term of the parties' collective bargaining agreement**. Whether SMART-TD has, in fact, exercised that authority is determined by the collective bargaining agreement, which includes not only the language of the collective bargaining agreement, but also the terms implied therein through past practice and course of dealing." Emphasis added.

The railroad is using the RLA as a smokescreen now that the tides have turned and they lost a pivotal legal argument in front of the Arkansas Supreme Court. If the railroad legitimately thought this matter should have been resolved throught the RLA they would have filed something in the framework of the RLA and moved

forward there. The railroad has chosen their forum, federal court, and assented to this jurisdiction.

The railroad argued that "A rule prohibiting firearms on an employer's property is unquestionably both a "rule" and a "working condition." See Doc. 53, pg. 17. However, this is unsupported by anything other than their assertion. When it comes to firearm possession, Arkansas law considers the vehicle to be an extension of a person's home, with all the protections that that provides. " 'Vehicle' means any automobile and is considered an extension of a person's home, with any protections that conveys…" Ark. Code Ann. § 5-73-101.

**B. Arkansas Code § 11-5-117 Does Not Discriminate Against Rail Carriers Therefore It is Not Preempted by the ICC Termination Act.**

The railroad claims that they alone stand liable to damages if someone is allowed to keep a firearm in their car, and therefore the statute discriminates against rail carriers. However, they cite nothing here that backs up their legal claim.

Even though Defendant's amended counter-claim gave them a homework assignment, they have clearly chosen not to have any of their massive team of lawyers determine whether or not their assertion was true.

In Arkansas we have airplanes, telecommunication companies, natural gas companies, oil companies, and a nuclear reactor. These are all heavily federally regulated and preempted industries yet the railroad has done nothing to address their dissimilarity.

In the railroad's own favorite case, it admits that the same statute forcing potential liability also applies to air carriers. "…Railway Labor Act (RLA), 45 U.S.C. §§ 151–88, which applies to air carriers as well as railroads." Miller v. S.W. Airlines

Co., 926 F.3d 898, 900 (7th Cir. 2019). So every air carrier would also be in the same position as Union Pacific.

Motor carriers and shippers and anyone involved covered by FELA type statutes would also be covered. See 49 U.S.C.A. § 31138. Therefore, the entire basis of railroad specific discrimination is easily debunked.

Furthermore, every case Defendant's Counsel has found that cites the ICCTA has something to do with interstate commerce. There are approximately 188 Federal Circuit Court and Supreme Court opinions citing the ICCTA, after reading several dozen, Defense Counsel cannot find a single case that does not cover "train stuff."

Such as:

The "…repair of dilapidated structures on Railway property…" Mendocino Ry. v. Ainsworth, 113 F.4th 1181, 1185 (9th Cir. 2024)

Something about notice and public comment regarding the termination of shipping of coal(?!) See In re W. Coal Traffic League, 108 F.4th 905 (D.C. Cir. 2024).

Railroad easements. See Stimson Lumber Co. v. U.S., 82 F.4th 1346 (Fed. Cir. 2023)

None of these cases are surprising exclusive regulations of interstate commerce. What would be surprising exclusive regulations of interstate commerce would be what an employee can leave out of sight in his vehicle for his perilous journey to and from Arkansas' most dangerous city.

The railroad also concocts an imaginary scenario where they would be held liable because they followed state law and allowed an employee to leave their gun in their car out of sight. Yet, they provide no legal framework as to how a case like this would proceed. The reason they do not, is because a case could not move

forward where the basis of liability was that the company was following the law. The Defense requests that the Plaintiff find a single case in the history of American jurisprudence where a contributing factor to liability was a party following the law.

There are numerous ports in this state, and they have a very similar statute that would prevail under the plaintiff's ludicrous claim. "Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section…" 46 U.S.C.A. § 30104. The Supreme Court recently reviewed this carbon copy of rights in The Dutra Group v. Batterton, 588 U.S. 358 (2019). The Jones Act did many things, one of them was piggyback maritime injury recovery law off of the extensive railroad regulations. Id.

## CONCLUSION

The railroad is grasping at straws, their arguments do not make any sense at their core. The relevance of their citations are strained. The railroad is not specifically targeted and they are invited in their reply to please differentiate themselves from air carriers, bus carriers, motor carriers, nuclear energy producers, telecommunications companies, and any other heavily federally regulated industry where FELA appies. Many other industries will face the same or substantially similar liability issues, including companies that operate our various ports.

There is no CBA agreement here to dissect under the RLA. That is an imaginary line drawn by the railroad. The ICCTA is restricted to just things regarding operating a railroad, and to stretch it further appears to have never happened in case law.

We implore the court to reject the Plaintiff's motion for summary judgment.

Respectfully Submitted on Behalf of Defendant
Randy Franklin,
By: W. Whitfield Hyman
AR BAR#: 2013237
King Law Group, PLLC
300 N 6th Street
Fort Smith, Arkansas 72901
Phone: (479) 318-0345
Fax: (479) 316-2252

## CERTIFICATE OF SERVICE

I, William Whitfield Hyman, attorney for Defendant Randy Franklin, hereby certify that I have on this the 28th day of October 2024, served a true and correct copy of the foregoing, upon:

Counsel for Union Pacific, including but not limited to:

Cynthia Kolb

Via the court's electronic filing system.