**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**UNION PACIFIC RAILROAD COMPANY**                              **PLAINTIFF**

**v.**                              **CASE NO. 4:22-cv-00960-LPR**

**RANDY G. FRANKLIN**                                                         **DEFENDANT**

\*                              \*                              \*

**STATE OF ARKANSAS,** *ex rel.*
**TIM GRIFFIN, ATTORNEY GENERAL**                              **INTERVENOR**

**THE STATE OF ARKANSAS'S BRIEF REGARDING UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Union Pacific moves for summary judgment based on two theories of federal preemption. The first theory of preemption arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq*. Under the RLA, a dispute between an employee and a carrier that involves the interpretation of workplace rules is considered a "minor dispute" and is preempted. This case involves a dispute between an employee (Franklin) and a carrier (Union Pacific) about whether Franklin may keep his gun in his locked vehicle in the Union Pacific parking lot pursuant to Ark. Code Ann. § 11-5-1-7, or instead, whether doing so is prohibited by Union Pacific's workplace rules. Thus, because this dispute involves the interpretation of workplace rules, it qualifies as a minor dispute. The claims in this case are therefore preempted by the RLA.

But that does not mean that Ark. Code Ann. § 11-5-107 is "preempted" in the sense that it does not apply to Union Pacific or its employees. Nor does it mean that Union Pacific is entitled to summary judgment. Just the opposite. When RLA preemption applies, *no court* has jurisdiction to hear the case. Instead, the case must be referred to an adjustment board for arbitration. Hence Franklin's counterclaims against Union Pacific—*and* Union Pacific's claims against Franklin—

must be referred to an adjustment board, where Franklin will have the opportunity to vigorously defend his rights under Ark. Code Ann. § 11-5-107.

The second theory of preemption arises under the Interstate Commerce Commission Termination Act. To qualify for ICCTA preemption, a state statute must be (1) unreasonably burdensome, or (2) discriminate against railroads. Ark. Code Ann. § 11-5-107 is not burdensome, and certainly not *unreasonably* burdensome. It imposes no financial burden on Union Pacific whatsoever. Nor does it discriminate against railroads. Ark. Code Ann. § 11-5-107 is generally applicable and, with one limited exception (for the Department of Corrections), it applies equally to all private employers in the State of Arkansas.

At bottom, the RLA deprives this Court of jurisdiction to decide any of the claims asserted in this case. Instead, the case must be referred to an adjustment board.

## BACKGROUND

In 2021, the Arkansas General Assembly enacted Act 809, titled:

AN ACT CONCERNING THE POSSESSION OR STORAGE OF A PERSON'S FIREARM WHEN A PERSON LEAVES HIS OR HER FIREARM INSIDE OF HIS OR HER CAR IN HIS OR HER EMPLOYER'S PARKING LOT; AND FOR OTHER PURPOSES.

Act 809 contains five sections. Relevant here, section 2 of Act 809 repealed Ark. Code Ann. § 5-73-326 and added in its place the new section 11-5-117. That new section provides that "[a] private employer shall not prohibit an employee from transporting or storing a legally owned firearm in the employee's private motor vehicle in the private employer's parking lot when the firearm is: (1) [l]awfully possessed; and (2) [s]tored out of sight inside a locked private motor vehicle." Ark. Code Ann. § 11-5-117(b)(1)–(2).

This case involves a constitutional challenge to Ark. Code Ann. § 11-5-117. Union Pacific Railroad Company initiated this lawsuit. Compl., ECF No. 1. It seeks a declaratory judgment

2

against one of its employees, Randy Franklin, to prevent him from storing a gun in his locked vehicle in the Union Pacific parking lot. First Am. Compl., ECF No. 47. Union Pacific's First Amended Complaint alleges that Ark. Code Ann. § 11-5-117 is preempted by the ICC Termination Act of 1995 ("ICCTA"), the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*., and the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*. First Am. Compl. ¶¶ 51–72, ECF No. 47.

Randy Franklin asserts counterclaims against Union Pacific. Answer and Countercl. to First Am. Compl., ECF No. 56. He alleges that Union Pacific knowingly violated Ark. Code Ann. § 11-5-117 and that he is therefore entitled equitable relief, compensatory damages, and costs and fees, including reasonable attorney's fees. *Id*. (citing Ark. Code Ann. § 16-118-115 (providing a cause of action against a private employer who knowingly violates Ark. Code Ann. § 11-5-117)).

Union Pacific moved for summary judgment on Counts I and II of its First Amended Complaint (ICCTA preemption and RLA preemption, respectively) and Franklin's counterclaim. Union Pacific R.R. Co.'s Mot. for Summ. J., ECF No. 52. In its summary judgment motion, Union Pacific asserts that Ark. Code Ann. § 11-5-117 is preempted, as applied to Union Pacific, by the RLA and the ICCTA. Union Pacific also asks this Court to enter a permanent injunction prohibiting Franklin from initiating a legal action under Ark. Code Ann. § 16-118-115 against Union Pacific in any state or federal forum.[1]

---

[1] Such an order would almost certainly violate Franklin's First Amendment rights. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) ("It is well established that the right to file a legal action is protected under the First Amendment."); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity.").

ARGUMENT

## I.    Laws similar to Ark. Code Ann. § 11-5-117 are ubiquitous.

As one district court recently observed, "[m]ore than twenty states in this country have passed some form of 'parking lot' or 'bring your gun to work' law to prohibit businesses and/or employers from banning firearms in parking lots or to provide immunity for employers who allow certain individuals to keep firearms stored in their vehicles." *W. Virginia Coal. Against Domestic Violence, Inc. v. Morrisey*, 689 F. Supp. 3d 272, 285 (S.D.W. Va. 2023) (citing Ala. Code § 13A-11-90 (2013); Alaska Stat. § 18.65.800 (2005); Ariz. Rev. Stat. § 12–781 (2009); Ark. Code Ann. § 11-5-117 (2021); Fla. Stat. § 790.251 (2008); Ga. Code Ann. § 16-11-135 (2016); Idaho Code § 5-341 (2009); 430 Ill. Comp. Stat. 66/65(b) (2021); Ind. Code § 34-28-7-2 (2017); Kan. Stat. Ann. § 75-7c10 (2017); Ky. Rev. Stat. Ann. § 237.106 (West 2006); La. Rev. Stat. Ann. § 32:292.1 (2008); Me. Stat. tit. 26, § 600(1) (2012); Minn. Stat. § 624.714(17)-(18) (2017); Miss. Code Ann. § 45-9-55 (2006); Neb. Rev. Stat. § 69-2441 (2018); N.D. Cent. Code § 62.1-02-13 (2019); Ohio Rev. Code Ann. § 2923.1210 (2017); Okla. Stat. tit. 21, § 1289.7a (2007); Tenn. Code Ann. § 39-17-1313 (2021); Tex. Labor Code. Ann. § 52.061 (2016); Utah Code Ann. § 34-45-103 (2014); Wis. Stat. § 175.60(15m) (2017)). Arkansas, of course, is one such state. And here, Union Pacific seeks to hold that Ark. Code Ann. § 11-5-117 is preempted by federal law.

## II.    Railway Labor Act

In the usual preemption case, a state law that conflicts with federal law is preempted, meaning that it is invalidated. *See Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1140 (8th Cir. 2024); *Chapman v. Lab One*, 390 F.3d 620, 625 (8th Cir. 2004) ("In the ordinary case, federal preemption is merely a defense to a plaintiff's state-law claim, and it does not alter the jurisdiction of the federal court."). So assume that Ark. Code Ann. § 11-5-117 were preempted in the usual case as applied to Union Pacific. Under that scenario, Union Pacific would

4

be entitled to a judgment in its favor to the effect that Ark. Code Ann. § 11-5-107 did not apply to it, assuming that that all the elements of preemption were satisfied.

But RLA preemption does not work that way. RLA preemption is "complete" preemption, *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 836 (8th Cir. 2020), meaning that it's jurisdictional. Indeed, "[i]t is settled law in this circuit that the RLA divests courts of subject-matter jurisdiction over claims arising out of the interpretation or application of a collective-bargaining agreement between a carrier and its employees." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1070 (8th Cir. 2021). Thus, if a state law is preempted by the RLA, then the case must be referred to the National Railroad Adjustment Board. 45 U.S.C. § 153 First (i)–(j); *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004). As the Eighth Circuit recently explained in *Avina v. Union Pac. R.R. Co.*, 72 F.4th 839 (8th Cir. 2023), the RLA "requires disputes over the interpretation of a collective-bargaining agreement to go to arbitration." *Id*. at 842. And as such, "[w]hen a dispute over the meaning of a collective-bargaining agreement crops up in a case involving a railroad or an airline, federal courts cannot hear it." *Id*.

Union Pacific's summary-judgment motion immediately runs headlong into a jurisdictional problem—if the RLA applies to the claims asserted in this case, then the Eight Circuit's decision in *Avina* teaches that the Court lacks jurisdiction to address the claims at all. *See Avina*, 72 F.4th at 844 n.4 ("Having concluded that the district court lacked subject-matter jurisdiction, we cannot consider Union Pacific's argument that it was otherwise entitled to judgment as a matter of law."). The upshot is that if Union Pacific is correct in its position about RLA preemption, then Franklin's claim against Union Pacific—*and* Union Pacific's claims against Franklin, both of which require the interpretation of workplace rules—must be referred to an adjustment board. Union Pacific apparently agrees with this point. *See* First Am. Compl. ¶ 70, ECF

5

No. 47 (stating that "minor disputes must be heard exclusively by an adjustment board or arbitral panel of coordinate jurisdiction under Section 3 of the RLA and cannot be heard in a court of law"). The question, then, is whether the RLA applies to the claims asserted in this case.

When the RLA applies, it completely preempts state-law claims that depend on an interpretation of a collective-bargaining agreement. *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 836 (8th Cir. 2020) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994); *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th. Cir. 2000)). To that end, the RLA requires "employees" (like Franklin) and "carriers" (like Union Pacific) to arbitrate "minor disputes," *Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1085 & n.4 (8th Cir. 1989), "*exclusively* before adjustment boards," *Krakowski*, 973 F.3d at 837 (citing 45 U.S.C. § 153 First (i)) (emphasis in original).

Labor disputes involving railroads fall into one of two categories. The first, "major disputes," involves "the formation of collective[-]bargaining agreements or efforts to secure them." *Avina*, 72 F.4th at 842 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)). They must be resolved through "a lengthy process of bargaining and mediation." *Id*. The other, "minor disputes," covers "controversies over the meaning of an existing collective[-]bargaining agreement in a particular fact situation." *Id*. (quoting *Hawaiian Airlines*, 512 U.S. at 253). The way to address those is different. *Id*. The initial step is to use the railroad's internal-dispute resolution process. *Id*. "And then, if the dispute ends up in formal litigation, the Railway Labor Act strips federal courts of subject-matter jurisdiction and places it in the National Railroad Adjustment Board." *Id*.

To qualify for RLA preemption, the dispute must satisfy two prongs: (1) the dispute must be between an employee or group of employees and a carrier or carriers, (2) that grows out of

grievances or out of an interpretation or application of agreements concerning rates of pay, rules, or working conditions. *Krakowski*, 973 F.3d at 837; 45 U.S.C. § 153 First (i). "[T]his means that when an employee sues a carrier (***or vice versa***)" and the claim depends on an interpretation of a collective-bargaining agreement, the RLA provides the exclusive cause of action. *Krakowski*, 973 F.3d at 837 (emphasis added).

Both prongs of RLA preemption are satisfied. The dispute—whether Franklin can keep his gun in his locked vehicle in the Union Pacific parking lot—is between an employee (Franklin) and a carrier (Union Pacific), and it grows out of grievances or an interpretation or application of agreements concerning workplace rules. Specifically, both the counterclaim asserted by Franklin and the claims asserted by Union Pacific grow out of an interpretation of General Code of Operating Rules 1.12, which prohibits Union Pacific employees from possessing "firearms or other deadly weapons" "while on duty or on railroad property." *See* First Am. Compl. 8, ECF No. 47 (quoting GCOR 1.12).

Thus, Franklin's counterclaim against Union Pacific must be referred to an adjustment board. And critically, the same is true for Unions Pacific's claims against Franklin. Because Union Pacific's declaratory judgment claims grow out of an interpretation of agreements concerning workplace rules, Union Pacific's claims must also be referred to an adjustment board. Union Pacific's summary-judgment motion must therefore be denied because this Court lacks jurisdiction to adjudicate Union Pacific's claims.

## III.    Interstate Commerce Commission Termination Act

Union Pacific's second theory of federal preemption stems from the Interstate Commerce Commission Termination Act. Union Pacific does not contend that Ark. Code Ann. § 11-5-117 *directly* conflicts with, and is therefore preempted by, the ICCTA. Nor could it. Ark. Code Ann. § 11-5-117 is generally applicable; it does not mention railroads at all or conflict with any provisions

of the ICCTA. Instead, Union Pacific favors a different theory of preemption. It urges that the ICCTA "preempts states laws of general applicability that effectively **discriminate** against rail carriers." Mem. in Supp. of Union Pacific R.R. Co.'s Mot. for Summ. J. 19, ECF No. 53 (emphasis original).

Enacted in 1995, the "ICCTA repealed much of the economic regulation previously conducted by the I[interstate] C[commerce] C[omission] and by state railroad regulators working in conjunction with the ICC." *City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1170 (8th Cir. 2016) (citation omitted). "To further the goal of limited state regulation of interstate rail transportation, Congress included a broadly worded preemption provision" in the ICCTA. *Id*. Pursuant to the ICCTA, the Surface Transportation Board ("STB") has exclusive jurisdiction over the following:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

49 U.S.C. § 10501(b). "[W]ith respect to regulation of rail transportation," the remedies set forth above "are exclusive and preempt the remedies provided under Federal or State law." *Id*.

Put another way, the ICCTA regulates, "*inter alia*, rail carriers' rates, terms of service, accounting practices, ability to merge with one another, and authority to acquire and construct rail lines." *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007) (citing 49 U.S.C. §§ 10101–11908). "Thus it regulates the *economics and finances* of the rail carriage industry—and provides a panoply of remedies when rail carriers break the rules." *Id*. (citing 49 U.S.C. §§ 11701–11707) (emphasis added). "Because the [ICCTA's] subject matter is limited to deregulation of the railroad industry, courts and the [STB] have rightly held that it does not

preempt *all* state regulation affecting transportation by rail carrier." *Id*. (internal citation omitted). "Rather, it preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.'" *Id*. (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1337 (11th Cir. 2001). Thus, state regulation is permissible if passes a two-part test: (1) it is not unreasonably burdensome, and (2) it does not discriminate against railroads. *Id*. at 253. "This is a fact-intensive inquiry." *Id*.

Regarding the unreasonable-burden prong, "the substance of the regulation must not be so draconian that it prevents the railroad from carrying out its business in a sensible fashion," and "the regulation must be settled and definite enough to avoid open-ended delays." *Jackson*, 500 F.3d at 254. To pass the non-discrimination prong, a state regulation "must address state concerns generally, without targeting the railroad industry." *Id*. States retain their police powers, allowing them to create health and safety measures, but "those rules must be clear enough that the rail carrier can follow them and . . . the state cannot easily use them as a pretext for interfering with or curtailing rail service." *Id*.

An opinion from the Sixth Circuit illustrates the limits of ICCTA preemption. In *Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533 (6th Cir. 2008), the Sixth Circuit held that a Michigan statute requiring the railroad to pay for pedestrian crossings installed across the railroad's tracks and sidewalks near the railroad's property was not preempted by the ICCTA. The court observed that the railroad "has been losing money and that the costs of sidewalk construction would create a financial burden for the [r]ailroad," but "[t]he fact that the statute may prevent the [r]ailroad from maximizing its profits, however, does not render the statute *unreasonably* burdensome." *Id*. at 541 (emphasis added). Rather, "[a] statutory requirement that the [r]ailroad

9

pay for pedestrian sidewalks and walkways is merely part of the cost of doing business as a railway running through the center of a town." *Id.*

As to the second prong, the court held that the fact that the Michigan statute "applies specifically to railroads does not make it discriminatory." *Adrian & Blissfield R. Co.*, 550 F.3d at 541. The court noted that "[t]his is not an instance in which the state has chosen to require something of the [r]ailroad that it does not require of similarly situated entities." *Id.* at 541–42. Instead, "[t]he concerns that animated the Village's sidewalk construction apply only to the [r]ailroad because the railroad bisects the town and pedestrian walkways are needed for public safety." *Id.* at 542. Further, there was "no evidence that local bodies could target railroads with the statute at issue in order to cause indefinite delays for railroad operations." *Id.* "Indeed, the Michigan statute gives the [r]ailroad an opportunity to construct the sidewalks itself." *Id.* Thus, the court explained, "because [the Michigan statute] addresses a general state concern about the safety of pedestrians, it does not discriminate against the [r]ailroad." *Id.*

Ark. Code Ann. § 11-5-117 easily survives both prongs of the analysis. As to the first prong, the statute is hardly "draconian"—it does not prevent Union Pacific from carrying out its business at all. Nor does it create a financial burden for Union Pacific. But even if it did, that would not render the statute *unreasonably* burdensome. *See Adrian & Blissfield R. Co.*, 550 F.3d at 541. As to the second prong, the statute does not discriminate against railroads. The statute is generally applicable; it does not mention railroads at all. Indeed, "[t]his is not an instance in which the state has chosen to require something of" Union Pacific "that it does not require of similarly situated entities." *Id.* at 541–42. With one limited exception, the statute applies uniformly to all private employers in the State of Arkansas. *See* Ark. Code Ann. § 11-5-117 (a)(2)(A) (excluding parking

10

lots owned by the Department of Corrections). Thus, because the statute addresses a general state concern, it does not discriminate against railroads.

Nonetheless, Union Pacific claims that the statute discriminates against railroads because the liability-immunity provision found in Ark. Code Ann. § 16-120-802 is severable from the requirements imposed by Ark. Code Ann. § 11-5-117. Section 16-120-802 provides:

> A business entity, owner or legal possessor of property, or private employer is not liable in a civil action for damages, injuries, or death resulting from or arising out of an employee's or another person's actions involving a handgun transported or stored under § 11-5-117 or from allowing a person to enter the private employer's place of business or parking lot under § 11-5-117, including without limitation the theft of a handgun from an employee's private motor vehicle, unless the business entity, owner or legal possessor of property, or private employer intentionally solicited or procured the other person's actions.

Ark. Code Ann. § 16-120-802(a).

Earlier this year, the Arkansas Supreme Court held that Ark. Code Ann. §§ 16-120-802 and 11-5-117 are severable, meaning that "section 11-5-117 is not dependent on the liability-immunity provisions of section 16-120-802, and therefore, if the latter is preempted by the Federal Employers' Liability Act (FELA), section 11-5-117 is not likewise preempted." *Union Pac. R.R. Co. v. Franklin*, 2024 Ark. 74, at 2, 687 S.W.3d 787, 788.

Union Pacific thus argues that the "immunity provision" "is undisputedly invalid as applied to railroads to the extent it purports to immunize them from negligence liability under the Federal Employers' Liability Act., 45 U.S.C. § 51, et seq. ('FELA')." Mem. in Supp. of Union Pacific R.R. Co.'s Mot. for Summ. J. 15, ECF No. 53. Union Pacific further contends that "[a]s a result of this severability ruling, Arkansas law now mandates that (i) employees may bring firearms onto all employers' parking lots and (ii) all employers *except* rail carriers enjoy complete immunity from any resulting liability." *Id*. at 15–16. "In other words," according to Union Pacific, "this scheme treats rail carriers differently from every other employer in the State." *Id*. at 16. Yet Union Pacific

11

would undoubtedly enjoy some of the immunities granted under Ark. Code Ann. § 16-120-802, regardless of FELA. As the Supreme Court has observed, "[l]iability under FELA is limited in these key respects: Railroads are liable only to their employees, and only for injuries sustained in the course of employment." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691, (2011). Thus, to the extent that a non-Union Pacific employee was injured because of an employee's possession of a gun in the Union Pacific parking lot, FELA would not apply, and Union Pacific would be entitled to immunity under Ark. Code Ann. § 16-120-802. The same would be true for any injuries to employees that were not sustained in the course of employment—Union Pacific would enjoy statutory immunity under § 16-120-802.

But setting these distinctions aside, Union Pacific's preemption argument faces another hurdle. To that end, Union Pacific argues that Ark. Code Ann. § 11-5-117 is preempted because a separate section—§ 16-120-802—purportedly discriminates against railroads. But this logic does not follow. These two sections are severable. Thus, if § 16-120-802 discriminates against railroads, then that section would be preempted. But § 11-5-117 would not be.

At bottom, Ark. Code Ann. § 11-5-117 is not unreasonably burdensome and it does not discriminate against railroads. Thus, it is not preempted by the ICCTA.

#### CONCLUSION

Under the RLA, the claims asserted by both Franklin and Union Pacific must be adjudicated by an adjustment board. As such, this Court lacks jurisdiction to decide whether ICCTA preemption applies. But if the Court does reach that question, it should hold that Ark. Code Ann. § 11-5-117 is not preempted by the ICCTA.

12

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:    Ryan Hale
       Ark. Bar No. 2024310
       Senior Assistant Attorney General

       Arkansas Attorney General's Office
       323 Center Street, Suite 200
       Little Rock, AR 72201
       (501) 295-7419
       (501) 682-2591 fax
       ryan.hale@arkansasag.gov

       *Attorneys for State of Arkansas, ex rel.*
       *Tim Griffin, Attorney General*

13