**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>RANDY G. FRANKLIN,<br><br>and<br><br>BENJAMIN CRAIG,<br><br>Defendants<br>and<br><br>STATE OF ARKANSAS, ex rel. TIM GRIFFIN, ATTORNEY GENERAL,<br>Intervenor | Civil Action No. 4:22-cv-960-LPR |

**SECOND AMENDED COMPLAINT**

Plaintiff Union Pacific Railroad Company, by and through its undersigned counsel, for its Second Amended Complaint against Defendants Randy G. Franklin and Benjamin Craig, alleges as follows:

**INTRODUCTION**

1. To protect the safety of its employees and the public, Union Pacific's longstanding work rules strictly prohibit employees from bringing firearms into the workplace. On August 3, 2020, Defendant Randy G. Franklin ("Franklin"), a Union Pacific conductor, had a loaded firearm in his vehicle while it was parked at Union Pacific's North Little Rock Yard. After conducting an investigatory hearing as provided by Union Pacific's collective bargaining agreement with Franklin's union, the International Association of Sheet Metal, Air, Rail, and Transportation

Workers—Transportation Division ("SMART-TD" or "Franklin's Union"), Union Pacific dismissed Franklin from employment.

2. Franklin's Union filed a grievance to challenge Franklin's discharge, and the dispute was heard before a grievance arbitration tribunal, known as a Public Law Board (the "PLB"), established pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq*. (the "RLA").

3. In an Award issued April 20, 2022, the PLB sustained discipline against Franklin equating to a suspension of nearly a year-and-a-half but ordered Union Pacific to restore him to employment without back pay or benefits for the time withheld from service as a result of the incident. The PLB specifically cautioned Franklin that Union Pacific would continue to maintain and enforce its zero-tolerance policy regarding firearms on company premises.

4. Following his reinstatement, Franklin (through counsel) has demanded that Union Pacific agree to his view that Arkansas law permits him to bring a firearm to the Union Pacific parking lot, notwithstanding Union Pacific's longstanding policies and practices, as well as federal law that imposes liability on Union Pacific for incidents of violence in the workplace. Franklin threatened legal action if Union Pacific did not accede to his position.

5. Union Pacific thus brought this declaratory judgment action to settle the parties' dispute. As this Court recognized, the case turns in part on the interplay between Ark. Code Ann. § 11-5-117, purporting to permit possession of firearms in private employee parking lots under certain conditions, and § 16-120-802, purporting to shield a private employer from liability arising from an employee's actions involving such a firearm. Because the latter is undisputedly preempted by federal law, the former cannot stand unless it is severable. This Court certified that question to the Arkansas Supreme Court, which held that the two provisions are severable. *Union Pac. R.R. v. Franklin*, 687 S.W.3d 787, 788 (Ark. 2024).

6. After the state high court's decision, the law in Arkansas is this: Railroads, like all other employers, must allow employees to bring guns onto private company property in the manner that § 11-5-117 contemplates. But railroads, *unlike any other employers*, are not fully immune from civil suits arising from any harms those guns cause. Arkansas law thus treats railroads differently from all other employers—that is, it discriminates against rail carriers. And the federal ICC Termination Act preempts state laws that discriminate against or target the railroad industry. The upshot is that federal law preempts § 11-5-117.

7. Through this Second Amended Complaint, Union Pacific seeks to name Defendant Craig as an additional party. Defendant Craig, through his counsel, consents to being named as an additional party.

**PARTIES**

8. Plaintiff Union Pacific is a Class I railroad that provides freight transportation services in 23 states in the western half of the United States.

9. Union Pacific is a Carrier within the meaning of the RLA, 45 U.S.C. § 151, First.

10. Union Pacific's headquarters building, and principal place of business is 1400 Douglas Street, Omaha, Nebraska 68179.

11. Union Pacific maintains a work location at 1020 Vine Street in North Little Rock, Arkansas.

12. Defendant Randy G. Franklin is a former employee of Union Pacific who holds the position of conductor. He currently resides at 191 Randy Lane, Gurdon, AR 71743.

13. Defendant Benjamin Craig is a current employee of Union Pacific who holds the position of locomotive engineer. His collective bargaining representative is the Brotherhood of

Locomotive Engineers and Trainmen ("BLET" or "Craig's Union"). He currently resides at 1133 Airport Road A3, Hot Springs, AR 71913.

## JURISDICTION & VENUE & AUTHORITY

14. This Court has subject matter jurisdiction under the Railway Labor Act, 45 U.S.C. §§ 151–188, the ICC Termination Act, 49 U.S.C. § 10501, and 28 U.S.C. §§ 1331 & 1337, because Union Pacific seeks prospective relief against the enforcement of a state law that violates the Constitution and laws of the United States.

15. The Court may declare the parties' legal rights and obligations under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, because the action presents an actual controversy within the Court's jurisdiction.

16. This Court has personal jurisdiction over Defendant Franklin because he is a citizen of Arkansas and he lives and resides in Arkansas and formerly worked for Union Pacific out of its North Little Rock, Arkansas location.

17. This Court has personal jurisdiction over Defendant Craig because he is a citizen of Arkansas and he lives and resides in Arkansas and currently works for Union Pacific out of its North Little Rock, Arkansas location.

18. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this judicial district and Union Pacific operates substantial rail properties therein.

## LEGAL BACKGROUND

19. Because the railroad industry was one of the first heavy industries nationwide in scope and intrinsically instrumental to interstate commerce, Congress stepped in to regulate the railroad industry before exercising authority over other sectors of the U.S. economy. To this day,

rail carriers like Union Pacific remain subject to one of "the most pervasive and comprehensive of federal regulatory schemes." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981). Three of those federal statutes conflict with the Arkansas statute upon which Franklin relies.

***The ICC Termination Act***

20. In 1995, the ICC Termination Act ("ICCTA") replaced the Interstate Commerce Commission with the Surface Transportation Board ("STB"), which has exclusive jurisdiction over rail transportation pursuant to "a broadly worded preemption provision." *City of Ozark, Ark. v. Union Pac. R.R.*, 843 F.3d 1167, 1170 (8th Cir. 2016). ICCTA implemented a "[f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation." H.R. Rep. No. 104–311, at 96 (1995).

21. Consistent with this purpose, Congress gave the STB exclusive jurisdiction over (1) "transportation by rail carriers" and (2) "the construction, acquisition, operation, abandonment, or discontinuance of [tracks] or facilities." 49 U.S.C. § 10501(b). Apart from certain narrow exceptions, ICCTA's remedies are "exclusive and preempt the remedies provided under Federal or State law." *Id.* ICCTA's broad sweep includes any "yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use," plus "the road used by a rail carrier" and any "switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation . . . ." *Id.* § 10102(6), (9)(A).

22. These sweeping provisions "produce both express and implied preemptive effects." *Edwards v. CSX Transp.*, 983 F.3d 112, 121 (4th Cir. 2020). As relevant here, ICCTA impliedly preempts state laws that "discriminate against railroads." *Norfolk S. Ry. v. Dille Rd. Recycling,*

*LLC*, 94 F.4th 517, 526 (6th Cir. 2024); *accord Delaware v. STB*, 859 F.3d 16, 18–19 (D.C. Cir. 2017). To avoid preemption, a law must be "generally applicable, [and] non-discriminatory," *Delaware*, 859 F.3d at 18—that is, "it must address state concerns generally, without targeting the railroad industry." *N.Y. Susquehanna & W. Ry. v. Jackson*, 500 F.3d 238, 254 (3d Cir. 2007).

23. This anti-discrimination requirement is generally labeled "as applied" preemption, as opposed to "categorical" preemption, which deals with direct regulations of rail transportation. *See Adrian Blissfield R.R. v. Village of Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008).

***The Federal Employers' Liability Act***

24. The Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, was enacted to provide a uniform national law providing liability against rail carriers for injuries to railroad employees during or in the course of their employment.

25. In contrast to the no-fault state systems for workers' compensation covering most industries, FELA generally requires injured railroad workers to prove that their employers' negligence was a cause of their injuries in order to recover. FELA claims are not adjudicated through a state administrative process but instead are litigated in state or federal court under federal law. Successful FELA litigants may recover compensatory damages for injuries sustained in the course of their employment.

***The Railway Labor Act***

26. The Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA") governs the subject of labor relations in the railroad industry, and beginning in 1936, the airline industry. The railroad and airline industries are generally exempted from coverage under the National Labor Relations Act. *See* 29 U.S.C. §§ 152(2), (3).

27. Labor disputes arising under the RLA fall within two categories. Disputes over the negotiation of collective bargaining agreements are referred to as "major disputes." Under the RLA, major disputes are subject to a mandatory mediation and resolution process.

28. The RLA provides a separate dispute resolution procedure for disputes concerning the interpretation or application of existing collective bargaining agreements, which are referred to as "minor disputes." Minor disputes that are not resolved in conferences between the parties or through the parties' grievance procedures are subject to mandatory arbitration. Section 3 of the RLA requires such disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" reflects that the nature of the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation or change to an agreement.

29. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.*, 491 U.S. 299, 303–05 (1989).

30. The RLA preempts state law claims that depend upon an interpretation or application of the collective bargaining agreement between a rail carrier and one of its unions. *Gore v. Trans World Airlines,* 210 F.3d 944 (8th Cir. 2000).

31. There is a rebuttable presumption that disputes between a railroad and its union employees are minor and, therefore, subject to mandatory binding arbitration exclusively under the RLA.

**ARKANSAS LAW ON FIREARMS AT WORK**

32. Arkansas maintains a law permitting possession of firearms in private employee parking lots under certain conditions. Ark. Code Ann. § 11-5-117 (July 28, 2021).

33. Arkansas maintains a law permitting an employee to file a private right of action against an employer for violation of the law permitting possession of firearms in private employee parking lots under certain conditions. Ark. Code Ann. § 16-118-115.

34. Arkansas maintains a law purporting to shield a private employer from liability in a civil action for damages, injuries, or death that arises out of an employee's actions involving a handgun transported and stored in the employer's parking lot under § 11-5-117. Ark. Code Ann. § 16-120-802.

35. The provisions of Ark. Code Ann. § 11-5-117 and Ark. Code Ann. § 16-120-802 are severable in the event either provision is found to be preempted by federal law. *Union Pac. R.R. v. Franklin*, 687 S.W.3d 787, 788 (Ark. 2024).

**FRANKLIN'S UNDERLYING CONDUCT AND ARBITRATION AWARD**

36. On August 3, 2020, at approximately 11:45 a.m., Union Pacific discovered that Franklin had stowed a firearm in his vehicle parked at Union Pacific's North Little Rock Yard, 1020 Vine St, North Little Rock, AR 72114. When asked at his disciplinary hearing, Franklin admitted that he did have a handgun in his vehicle on August 3, 2020.

37. Union Pacific maintains two longstanding rules prohibiting employees from bringing firearms onto company property. General Code of Operating Rules ("GCOR") 1.12,

prohibits employees (other than railroad police) "while on duty or on railroad property" from having "firearms or other deadly weapons." Item 10-I: Union Pacific Railroad Policies – Policy to Address Violence & Abusive Behavior in the Workplace ("Workplace Violence Policy") prohibits employees from "possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons." The Workplace Violence Policy specifically states that "[t]his prohibition applies even if the individual is licensed to carry a concealed handgun under state law."

38. Union Pacific has maintained a long-standing past practice, with the knowledge and consent of Franklin's Union and Craig's Union, to maintain and enforce a zero-tolerance policy for the presence of firearms by employees while on duty or on railroad property (except for railroad police).

39. Franklin's Union and Craig's Union, through their acquiescence to this long-standing past practice and their repeated failure to bargain for a change to this practice, consented to the imposition of the Union Pacific's Workplace Violence Policy and GCOR 1.12.

40. Franklin's Union and Craig's Union, acting on behalf of and for their employee members, including Franklin and Craig, have consented to and waived any rights of their employees to violate the terms of the Union Pacific's Workplace Violence Policy and GCOR 1.12.

41. On August 31, 2020, Union Pacific terminated Franklin's employment for violating the Workplace Violence Policy and GCOR 1.12.

42. On behalf of Franklin, SMART-TD grieved Franklin's dismissal and ultimately submitted the issue as a minor dispute to Public Law Board 7029.

43. On April 20, 2022, the Public Law Board issued Award No. 200. A true and correct copy of that decision is attached as Exhibit 1.

44. Through its decision, the Board found Franklin guilty of the offense charged but held that Franklin's length of service and good record "stand in mitigation of the discipline of discharge."

45. As a remedy, the Board sustained a suspension of nearly a year-and-a-half for Franklin, ordering Union Pacific to restore him to employment but without back pay or benefits for the time withheld from service as a result of his violation.

46. In its award, the Board stated that Franklin "should now be aware that it remains the firm position of this carrier that bringing a firearm on property, even if stored in a locked vehicle, continues to not be permitted. The claimant is reminded that the carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced."

47. On or around March 31, 2022, Union Pacific restored Franklin to his position in accordance with Award 200.

**UNION PACIFIC'S PRESENT DISPUTES WITH DEFENDANTS FRANKLIN AND CRAIG**

48. On or around September 6, 2022, Franklin's lawyer, W. Whitfield Hyman of King Law Group PLLC, sent a letter to Union Pacific's general counsel.

49. In his letter, Franklin's lawyer advised Union Pacific that Franklin "desires simply to enjoy the protection provided by Ark. Code Ann. § 11-5-117" and stated that Union Pacific's policies "would run afoul of Ark. Code Ann. 11-5-117."

50. Franklin's lawyer quoted in its entirety Ark. Code Ann. § 16-118-115, which authorizes a private right of action for violations of Ark. Code Ann. 11-5-117.

51. Franklin's lawyer advised Union Pacific that Franklin will "act accordingly" if Union Pacific did not agree with Franklin's position.

52. Franklin's lawyer set a deadline for Union Pacific to respond by October 6, 2022.

53. On October 5, 2022, Union Pacific commenced the instant suit on the grounds that Ark. Code Ann. § 11-5-117 is preempted by the RLA and FELA.

54. With leave of Court and the concurrence of Franklin, Union Pacific filed its First Amended Complaint on August 28, 2024, seeking a declaration that Ark. Code Ann. § 11-5-117 is preempted by the RLA and ICCTA.

55. On September 12, 2024, Union Pacific dismissed Franklin from employment due to disciplinary infractions unrelated to the present litigation. Franklin's Union is advancing a labor grievance seeking Franklin's reinstatement and that grievance currently is awaiting arbitration.

56. On February 26, 2025, counsel for Franklin first alluded to additional Union Pacific employees wishing to bring firearms onto Union Pacific's parking lots located in Arkansas. On April 16, 2025, counsel for Franklin disclosed that he was also representing Defendant Craig, who wishes to bring firearms onto Union Pacific's parking lot. On May 2, 2025, Defendant' counsel added that Defendant Craig intends to pursue legal action against Union Pacific if not permitted to bring his firearm onto Union Pacifici's parking lot.

57. At this point, there is a real and concrete dispute between Union Pacific and Defendants Franklin and Craig on the effect of Ark. Code Ann. § 11-5-117 as it applies to Union Pacific's parking lots in Arkansas.

**COUNT I – DECLARATORY JUDGMENT**
**(ICCTA Preemption)**

58. Union Pacific re-alleges and re-incorporates the preceding paragraphs.

59. Pursuant to 28 U.S.C. § 2201, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration." Pursuant to 28 U.S.C. § 2202, "further necessary or proper relief based on a declaratory judgment" may be granted after notice and hearing on "any adverse party whose rights have been determined by such judgment."

60. An actual and substantial controversy exists between Union Pacific and Defendants on whether Defendants are permitted by applicable federal and state law to bring a firearm onto a Union Pacific parking lot.

61. Under Ark. Code Ann. § 11-5-117(b), a private employer may not "prohibit an employee from transporting or storing a legally owned firearm in the employee's private motor vehicle in the private employer's parking lot."

62. Ark. Code Ann. § 16-120-802 shields private employers from civil liability "for damages, injuries, or death resulting from or arising out of" compliance with § 11-5-117 except in cases of an employer's intentionally wrongful conduct.

63. Under FELA, an injured Union Pacific employee or the estate of a deceased Union Pacific employee could recover damages against Union Pacific for an injury or death resulting from or arising out of a handgun transported or stored on Union Pacific's property, if it resulted in whole or in part from Union Pacific's negligence. Whether a FELA action is litigated in state or federal court, negligence under FELA is a question of federal law and does not depend on state law.

64. To the extent § 16-120-802 purports to exempt Union Pacific from such liability, it is preempted as applied to railroads, including Union Pacific. The Arkansas Legislature cannot immunize Union Pacific from federal civil liability under FELA.

65. But under state law, FELA's preemption of § 16-120-802 does not relieve Union Pacific of its obligation to comply with § 11-5-117, because the two provisions are severable. *Franklin*, 687 S.W.3d at 788.

66. Railroads, including Union Pacific, must therefore comply with the requirements of § 11-5-117 without the full liability protection from negligence claims that every other private employer in the state enjoys.

67. On information and belief, no other kind of employer in Arkansas is subject to this combination of requirements.

68. As construed by the Arkansas Supreme Court in *Franklin*, Arkansas's statutory regime discriminates against railroads by requiring them—and only them—to allow employees to bring firearms onto company property without fully protecting them from resulting civil liability.

69. A real, live and ripe controversy exists between the parties with respect to the applicability of Ark. Code Ann. 11-5-117 to Union Pacific.

70. Accordingly, Union Pacific respectfully requests judgment in its favor and against Defendants and specifically that the Court:

a. Declare that Ark. Code Ann. § 11-5-117 is preempted by the ICC Termination Act to the extent that it would apply to Union Pacific parking lots located in Arkansas;

b. Enter a permanent injunction prohibiting Defendants (directly, and through any agent or attorney representing them) from initiating a legal action under Ark. Code Ann. § 16-118-115 against Union Pacific, in any state or federal forum; and

c. Issue such other and further relief as justice requires.

**COUNT II – DECLARATORY JUDGMENT**
**(RLA Preemption)**

71. Union Pacific re-alleges and re-incorporates the preceding paragraphs.

72. Pursuant to 28 U.S.C. § 2201, this Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration." Pursuant to 28 U.S.C. § 2202, "further necessary or proper relief based on a declaratory judgment" may be granted after notice and hearing on "any adverse party whose rights have been determined by such judgment."

73. An actual and substantial controversy exists between Union Pacific and Defendants on whether Defendants are permitted by applicable federal and state law to bring a firearm onto a Union Pacific parking lot.

74. Defendants contend that Ark. Code Ann. § 11-5-117 allows them to bring a firearm onto a Union Pacific parking lot.

75. Ark. Code Ann. § 11-5-117 is preempted by the RLA to the extent it would purport to allow an employee to bring a firearm onto a Union Pacific parking lot, which would violate Union Pacific's collective bargaining agreements, which incorporate the consent of both Franklin's Union and Craig's Union to Union Pacific's longstanding enforcement of its Workplace Violence Policy and GCOR 1.12. Through the CBA, Defendants have waived any state law right they would otherwise possess to bring a firearm onto a Union Pacific parking lot.

76. Any claim by Defendants that Franklin's Union or Craig's Union have not consented, on Defendants' behalf, to Union Pacific's enforcement of its Workplace Violence Policy and GCOR 1.12 requires the interpretation or application of Union Pacific's collective bargaining agreements and therefore constitutes a "minor dispute" within the meaning of the RLA. Such minor disputes must be heard exclusively by an adjustment board or arbitral panel of coordinate jurisdiction under Section 3 of the RLA and cannot be heard in a court of law.

77. Accordingly, there exists a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.

78. Therefore, Union Pacific respectfully requests judgment in its favor and against Defendants and specifically that the Court:

a. Declare that the dispute between Defendants and Union Pacific as to applicability of Ark. Code Ann. § 11-5-117 as applied to Union Pacific parking lots located in Arkansas constitutes a "minor dispute" within the meaning of the RLA;

b. Enter a permanent injunction prohibiting Defendants (and any agent or attorney representing them) from initiating a legal action under Ark. Code Ann. § 16-118-115 against Union Pacific, in any state or federal forum; and

c. Issue such other and further relief as justice requires.

Respectfully submitted,

Cynthia W. Kolb (ABA # 2000156)
ROSE LAW FIRM
120 East Fourth Street
Little Rock, AR 72201
Phone: (501) 377-0382
Fax: (501) 375-1309
ckolb@roselawfirm.com

and -

Joseph P. Sirbak, II (admitted *pro hac vice*)
Robert S. Hawkins (admitted *pro hac vice*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2000
jsirbak@cozen.com
rhawkins@cozen.com

Michael J. Mills (admitted *pro hac vice*)
Union Pacific Railroad
1400 Douglas Street
Omaha, NE 68179
(402) 544-0441
mjmills@up.com