**PUBLIC LAW BOARD NO. 7029**

**SMART - TRANSPORTATION DIVISION )**
**) CASE NO. 200**
**v. ) AWARD NO. 200**
**)**
**UNION PACIFIC RAILROAD COMPANY )**

**STATEMENT OF CLAIM:**

**"Claim is on behalf of Conductor Randy G. Franklin for reinstatement of service, removal of discipline (for allegedly parking your car at the location of 1020 Vine Street North Little Rock, AR and you allegedly had a loaded firearm stowed in your vehicle while it was parked on company property.) from the personal record, the removal of EQMS notations, as well as restoration of point system, and pay for any and all time lost including time for attending investigation. Claim includes payment for all wage equivalents to which entitled including vacation time; with all medical, surgical, life and dental benefits, and reimbursement for any expenditures to secure like or similar insurance coverage, and/or out-of-pocket medical expenses that were incurred because insurance coverage that lapsed as a result of the discipline."**

**FINDINGS AND OPINION:**

**Public Law Board No. 7029, upon the whole record and all the evidence, finds that the parties involved in this dispute are respectively Carrier and Employees within the meaning of the Railway Labor Act, as amended. Parties to said dispute were given due notice of hearing thereon.**

**On August 21, 2020, the Claimant attended a formal hearing to develop the facts and determine his responsibility, if any, regarding a charge of allegedly having parked his car at the location of 1020 Vine Street, North Little Rock, AR, with a loaded firearm stowed in his vehicle while it was parked on company property. The alleged incident occurred on August 3, 2020, at approximately 11:45 a.m., near Milepost 343.5, Hoxie Subdivision, while the Claimant was employed as a conductor.**

**By letter dated August 31, 2020, the Carrier notified the Claimant that the charge against him was sustained after careful consideration of the evidence adduced at the hearing. The Claimant was assessed discipline of dismissal from all service with the Union Pacific Railroad for his violations of GCOR 1.12, *Weapons*;**

**and Item 10-I:** ***Union Pacific Railroad Policies – Policy to Address Violence & Abusive Behavior in the Work Place*****.**

**The Organization promptly appealed the Carrier's disciplinary action and the parties ultimately conducted an on-property conference on the matter. Unable to reach a mutual resolution of the dispute, the parties brought this dispute properly before the Board for final and binding adjudication.**

**The Board has carefully reviewed the investigation transcript and the full record of this case as developed on the property. We have considered the parties' procedural arguments as set forth in their submissions at arbitration. We find that the Claimant was afforded all contractual due process rights, and that this matter is procedurally sound in all respects.**

**On August 2, 2020, the Claimant was called for the conductor's position on Train MASAR-10, which he and his crew operated from North Little Rock, AR to Longview, TX. On August 3, 2020, he and his crew were called at 12:00 p.m., for Train DH35DU-03, his return assignment to North Little Rock. Upon reporting for duty on August 2, 2020, the Claimant parked his truck, a 2006 Chevy Avalanche, in the Carrier's parking lot at 1020 Vine Street. It is not disputed that the Claimant left in the pocket behind the passenger seat a loaded handgun (9 mm Beretta) which North Little Rock Police Department law enforcement personnel found when investigating and extinguishing an electrical fire in the Claimant's truck.**

**A check of the firearm showed it properly registered to Claimant. Law enforcement determined that the Claimant possessed a valid concealed handgun license and determined the Claimant had broken no Arkansas or city code violations by leaving the firearm secured in the vehicle. The Claimant was thus advised he could retrieve the firearm from the North Little Rock Police Department. On August 6, 2020, the Carrier issued the Claimant a Notice of Investigation, identifying GCOR 1.12 and Item 10-I of Union Pacific Policies, quoted above, as among the rule and policy possibly violated by stowing a loaded firearm in his vehicle while parked on company property.**

**GCOR 1.12 –** ***Weapons*****, states:**

> **While on duty or on railroad property, employees must not have firearms or other deadly weapons, including knives with a blade longer than 3 inches. However, railroad police are authorized to possess firearms in the course of their work.**
> **Application:**

> **Also refer to UPRR Policy to Address Violence & Abusive Behavior in the Work Place. Access the policy by using the link: http://home.www.uprr.com/emp/ec/policy/violence.shtml**
> **Rule Updated Date**
> **April 1, 2015**

**The relevant portions of the governing UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy, as revised on May 11, 2015, read in pertinent part:**

> **Union Pacific is committed to maintaining a safe work environment free of all forms of violence, including verbal and physical threats. The Company has a zero tolerance policy with respect to all forms of violence in the workplace. This policy applies to all employees, customers, contractors, vendors, visitors, or any individual on Union Pacific property. Individuals subject to this policy as also responsible for compliance with applicable state and federal laws.**
>
> *** * ***
>
> **Union Pacific employees and all other individuals on Company property or involved in Union Pacific business off Company property are prohibited from possessing or hiding weapons in facilities, equipment, or vehicles used in operations while on such property, or on their persons, which includes but is not limited to grips, suitcases, gym bags and purses. This prohibition applies even if the individual is licensed to carry a concealed handgun under state law. Only Union Pacific Police and on-duty law enforcement officers acting in an official capacity are authorized to possess weapons on Company property.**
>
> **For purposes of this policy, a "weapon" shall mean any device, instrument, material or substances (animate or inanimate) that is used to threaten, or is capable of causing, death or bodily injury. This prohibition includes but is not limited to firearms, knives with a blade longer than three inches, tasers, stun guns and pepper sprays. Union Pacific Police are authorized to make the final determination of whether a particular item constitutes a weapon under this policy.**
>
> **Alleged violations of this policy will be investigated. All proven violations of this policy will result in appropriate disciplinary action**

> **up to and including termination of employment with the Company as well as possible civil or criminal prosecution when appropriate.**

*** * ***

**Arkansas Code A.C.A. § 5-73-326. *Licensee rights – Private employer parking lot.* was in effect at the time of the incident. It reads as follows:**

> **(a) A private employer shall not prohibit an employee who is a licensee from transporting or storing a legal owned handgun in the employee's private motor vehicle in the private employer's parking lot when:**
>
> **(1) The handgun:**
>
> **(A) Is lawfully possessed;**
>
> **(B) Is stored out of sight inside a locked private motor vehicle in the private employer's parking lot; and**
>
> **(C)**
> **(i) Is stored inside a locked personal handgun storage container that is designed for the safe storage of a handgun.**
>
> **(ii) An employee is not required to store the handgun in the personal handgun storage container as required in subdivision (a)(1)(C)(i) of this section until he or she is exiting his or her private motor vehicle; and**
>
> **(2) The employee has in his or her possession the key to the personal handgun storage container as required by subdivision (a)(1)(C)(i) of this section.**

**The Claimant testified that he habitually drove to work with the handgun in his car in order to feel safe while making the 80-mile commute between his residence and work location at North Little Rock. The totality of his testimony further established he had completed the required training necessary for obtaining a concealed handgun carry license, and that it has never been his intent to use the handgun for illicit purposes at work, or to undertake an act of violence. The Claimant submitted a letter of support from the Sheriff of Clark County, Arkadelphia, AR, where the Claimant has been a life-long resident, attesting to his impeccable character and excellent reputation with the community. The Claimant as a longstanding employee of the Carrier, was periodically trained and qualified on**

**the General Code of Operating Rules, including GCOR 1.12, and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy.**

**The Board has carefully studied the extensive record regarding all substantive issues underlying this case. We have carefully reviewed the Carrier's arguments as set forth during the on-property handling and in its written submission and during oral arguments before the Board. We have afforded equal consideration to the Organization's position and arguments on the Claimant's behalf as conveyed throughout the on-property handling of this case and at arbitration. The Organization's strong advocacy on behalf of the Claimant is well reflected in the record properly before this Board.**

**The Board finds that the record contains substantial evidence in support of the Carrier's determinations that the Claimant violated GCOR 1.12 and the UPRR Policy to Address Violence & Abusive Behavior in the Work Place Policy by keeping a handgun in his vehicle while parked on company property. Although the Claimant and Organization dispute the Carrier's right to enforce its rule and policy under Arkansas law as it pertains to employer parking lots, the Carrier's long-standing and well-promulgated rule and policy prohibiting bringing weapons to work, including stowing them in personal vehicles, addresses a conduct matter on which all employees, including the Claimant, have been consistently trained on as a means toward ensuring the Carrier's ability to maintain a safe work environment free of all forms of violence.**

**As the Carrier argues, the GCOR 1.12, *Weapons*, falls within the Rule Category of Dismissible Offenses as specified in the well-promulgated MAPS Process Matrix (updated, November 1, 2019). The Board finds that the Carrier has consistently enforced GCOR 1.12 and the Violence & Abusive Behavior Work Place Policy. We are thus unwilling to interfere with the Carrier's administration and enforcement of this rule and policy as the Carrier deems appropriate.**

**However, in this particular case the totality of the facts and circumstances and the Claimant's length of service and good record stand in mitigation of the discipline of discharge. The Board rules that appropriate disciplinary action in this particular case falls short of permanent dismissal.**

**Therefore, the Board holds that the instant claim shall be sustained in part. The Claimant shall be reinstated to service, with seniority intact, but without back pay or benefits from the time withheld from service as a result of this incident until his reinstatement. The Claimant's failure to have his firearm secured in a lock box, as required by Arkansas Code A.C.A. § 5-73-326 at the time of this incident, has not gone unnoticed by the Board, and contributes to our decision to deny back pay.**

**The Claimant should now be aware that it remains the firm position of this Carrier that bringing a firearm on property, even if stowed in a locked vehicle, continues to not be permitted. The Claimant is reminded that the Carrier has made clear during the handling of this matter that it intends to not waiver in its position that GCOR 1.12 and the longstanding policy of zero tolerance with regard to possessing firearms in facilities, equipment or vehicles on company premises, will continue to be maintained and enforced.**

**The Claimant's reinstatement is conditioned upon his satisfactory completion of the customary requirements for employees returning to service after a protracted period of absence. The Carrier is directed to return the Claimant to service at the level of MAPS Training 1, with a 24-month retention period to end on August 3, 2022.**

**AWARD:**

**Claim sustained in accordance with the Findings. The Carrier is ordered to comply with this Award within 30 days of its date.**

Lynette A Ross
**Lynette A. Ross, Neutral Member**

David L. Young
**David L. Young,**
**Carrier Member**

Terry L. Dixon
**Terry L. Dixon,**
**Employee Member**

**Dated:** 4/20/2022